PROSKAUER ROSE LLP
Gregory I. Rasin
Elise M. Bloom
Steven D. Hurd
1585 Broadway
New York, New York  10036-8299
Telephone: 212.969.3000
Fax: 212.969.2900
E-mail: grasin@proskauer.com
*Attorneys for Defendant*


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JANNIE PILGRIM, GIOVANNA HENSON,    :
JESAN SPENCER, BRENDA CURTIS,    :    Civil Action No.: 07-6618 (CM) (AJP)
   :    **ECF Case**
       Plaintiffs,    :
   :
     against    :
   :
THE MCGRAW-HILL COMPANIES, INC.,    :
   :
       Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................iv

PRELIMINARY STATEMENT ...........................................................................................1

PLAINTIFF HENSON...........................................................................................................1

PLAINTIFF SPENCER .........................................................................................................2

PLAINTIFF CURTIS.............................................................................................................3

STATEMENT OF FACTS .....................................................................................................5

ARGUMENT ..........................................................................................................................5

SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF DEFENDANT ON ALL
OF PLAINTIFFS' CLAIMS ..................................................................................................5

   A.  SUMMARY JUDGMENT STANDARD ........................................................................5

   B.  APPLICABLE LEGAL STANDARDS FOR PLAINTIFFS' SUBSTANTIVE CLAIMS ...6

      1.  Standard For Evaluating Plaintiffs' Race Discrimination Claims............................6

      2.  Standard For Evaluating Plaintiffs' Retaliation Claims...........................................7

      3.  Standard For Evaluating Plaintiff Spencer's Constructive Discharge Claim............8

   C.  PLAINTIFF GIOVANNA HENSON ...............................................................................9

      1.  Certain Of Henson's Discrimination Claims Are Time-Barred ..............................9

      2.  Henson's Claims Of Discriminatory Failure To Promote And Disparate Treatment
         Fail As A Matter Of Law ......................................................................................11

         a.  Human Resources Representative at S&P ..................................................12

         b.  Recruiting Specialist, Campus Recruiting at S&P ....................................14

         c.  The Three Remaining Positions .................................................................17

      3.  Henson's Allegations of Retaliation Are Without Merit .........................................18

a.  Henson Cannot Establish A *Prima Facie* Case Of Retaliation Because Her Purported Complaints Do Not Constitute Protected Activity .............18

b.  Even Assuming That Henson Had Engaged In Protected Activity, She Still Cannot Establish A *Prima Facie* Case of Retaliation As No Causal Connection Between Her Alleged Complaints And Any Adverse Employment Action Exists ...................................................................21

D.  PLAINTIFF JESAN SPENCER ...................................................................22

   1.  Defendant Is Entitled To Summary Judgment Dismissing Spencer's Race Discrimination And Hostile Work Environment Claims .........................................22

a.  The Facts Upon Which Spencer Premises Her Hostile Work Environment Claims Are Legally Insufficient To Sustain Such A claim ...23

b.  The Court Should Dismiss Spencer's Claim of Hostile Work Environment Because It Exceeds The Scope Of Her Administrative Charge ........................................................................................................26

c.  Spencer's Claim That Her Job Responsibilities Were Discriminatorily Reduced On Account Of Her Race Is Without Merit.................................26

   2.  Spencer's Allegations Of Retaliation Are Also Without Merit.................................29

a.  Spencer's Performance Evaluation For 2005..............................................30

b.  The Alleged Reduction Of Spencer's Duties .............................................32

c.  Spencer's Lateral Transfer To Business Information Group ("BIG") ........34

d.  Contrary To Spencer's Claims That She Was Constructively Discharged, She Voluntarily Resigned From Her Employment With McGraw-Hill......36

E.  PLAINTIFF BRENDA CURTIS ...................................................................37

   1.  Curtis's Claims Of Racial Discrimination And Retaliation Arising Prior to September 14, 2005 Are Barred By The General Release She Knowingly And Voluntarily Signed ..................................................................................................37

   2.  Curtis's Claims Of Discriminatory Failure To Hire And Disparate Treatment Fail As A Matter Of Law ...................................................................................................40

a.  Curtis Cannot Make Out A *Prima Facie* Case Of Discrimination ............40

(i)  *Curtis Fails to provide Sufficient Evidence of a Vacancy for one Position*........................................................................................40

(ii)   *Curtis Lacked the Requisite Qualifications or Was Less Qualified Than the Hiree for Six positions* ..................................41

(iii)   *For One Position, Curtis Has Failed to Allege Facts Sufficient to Give Rise to an Inference of Discrimination* ...........................43

(iv)   *For One position, Hiring Was "Cancelled"* ..............................44

(v)   *Curtis Has Failed to Allege Facts Giving Rise to an Inference of Discrimination Regarding Any of Her Applications* ...............44

b.   Defendant Had Legitimate, Non-Discriminatory Reasons For Its Hiring Decisions ..................................................................................45

c.   Curtis Has No Evidence of Pretext ............................................................46

3.   Curtis's Allegations Of Retaliation Are Also Without Merit ...................................46

a.   Curtis Cannot Establish a Retaliation Claim As To Any Adverse Hiring Decision ..................................................................................47

(i)   *The Hiring Managers Were Unaware That Curtis Complained* ..47

(ii)   *Defendant Had Legitimate, Non-Retaliatory Reasons For its Hiring Decisions Which Are Not Pretextual* ..............................48

b.   Curtis Fails to Establish that the Letter of Recommendation She Received from Stadnyk Constituted an Adverse Employment Action Sufficient to Constitute Retaliation ...........................................................48

CONCLUSION ..............................................................................................................50

iii

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Alfano v. Costello*,
    294 F.3d 365 (2d Cir. 2002) ....................................................................23, 24

*Almornord v. Kingsbrook Jewish Medical Ctr.*,
    Civ. No. 4071,
    2007 U.S. Dist. LEXIS 58529 (E.D.N.Y. Aug. 10, 2007) ...................................44

*Alvarez v. Nicholson*
    No. 03 Civ. 4173 (RCC),
    2005 U.S. Dist. LEXIS 45744 (S.D.N.Y. Aug. 3, 2005).................................13, 14

*Bennett v. Watson Wyatt & Co.*,
    136 F. Supp. 2d 236 (S.D.N.Y. 2001) ..............................................................36

*Bogdan v. N.Y. City Transit Auth.*,
    No. 02 Civ. 09587 (GEL),
    2005 U.S. Dist. LEXIS 9317 (S.D.N.Y. May 13, 2005) ......................................5

*Bradley v. TIAA-CREF*,
    No. 04 Civ. 2434 (RCC)(KNF),
    2005 U.S. Dist. LEXIS 24455 (S.D.N.Y. Oct. 20, 2005)...................................39

*Branker v. Pfizer, Inc.*,
    981 F. Supp. 862 (S.D.N.Y. 1997) ..................................................................39

*Brenes v. City of N.Y*,
    No. 01 Civ. 3943 (SJF)(LB),
    2007 U.S. Dist. LEXIS 84737 (E.D.N.Y. Nov. 9, 2007) ...................................34

*Burlington N. & Santa Fe Ry. v. White*,
    548 U.S. 53, 126 S. Ct. 2405 (2006) ............................................... 30, 34, 48, 49

*Butts v. N.Y. Dep't of Hous. Pres. & Dev.*,
    990 F.2d 1397 (2d Cir. 1993).........................................................................26

*Byrnie v. Town of Cromwell Bd. of Educ.*,
    243 F.3d 93 (2d Cir. 2001) ........................................................................13, 16

*Campbell v. Home Depot U.S.A., Inc.*,
    No. 03 Civ. 1421 (KMK) (HBP), 2006 U.S. Dist. LEXIS
    14958 (S.D.N.Y. Mar. 30, 2006), *aff'd*, 221 Fed. App'x 21 (2d Cir.),
    *cert. denied* 128 S. Ct. 107 (2007) ................................................................8

*Castro v. New York City Bd. of Educ. Personnel Dir.*,
No. 96 Civ. 6314 (MBM),
1998 U.S. Dist. LEXIS 2863 (S.D.N.Y. Mar. 11, 1998).......................................... 21, 27, 33

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548 (1986) ..................................................................................5

*Chacko v. DynAir Servs.*,
No. 02 Civ 9424,
2008 U.S. App. LEXIS 7397 (2d Cir. April 7, 2008) .......................................................19

*Cifra v. General Electric Co.*,
252 F.3d 205 (2d Cir. 2001) .......................................................................................7, 35

*Cramer v. Pyzowski*,
No. 04 Civ. 1122 (SLT)(SMG),
2007 U.S. Dist. LEXIS 38375 (E.D.N.Y. May 25, 2007) ...................................................19

*Croswell v. Triborough Bridge & Tunnel Auth.*,
No. 04 Civ. 2990 (NRB),
2007 U.S. Dist. LEXIS 58343 (S.D.N.Y. Aug. 7, 2007).....................................................24

*Cruz v. Coach Stores, Inc.*,
202 F.3d 560 (2d Cir. 2000) .......................................................................................6, 24

*Davis v. State Univ. of N.Y.*,
802 F.2d 638 (2d Cir. 1986) .................................................................................................16

*Dawson v. Bumble & Bumble*,
398 F.3d 211 (2d Cir. 2005) .......................................................................................6, 16

*Dewey v. PTT Telecom Neth., U.S., Inc.*,
No. 94 Civ. 7838,
1996 U.S. App. LEXIS 15840 (2d Cir. July 2, 1996) .......................................................39

*Diaz v. Weill Med. Coll.*,
No. 02 Civ. 7380 (AJP),
2004 U.S. Dist. LEXIS 2054 (S.D.N.Y. Feb. 13, 2004),
*aff'd*, No. 04 Civ. 1489,
2005 U.S. App. LEXIS 13286 (2d Cir. June 24, 2005)......................................................27

*Dorrilus v. St. Rose's Home*,
234 F. Supp. 2d 326, (S.D.N.Y. 2002) ...............................................................................25

*Esterquest v. Booz Allen & Hamilton, Inc.*,
No 97. Civ. 6957 (LMM),
2002 U.S. Dist. LEXIS 2545 (S.D.N.Y. Jan. 19, 2002) .......................................................9

*Faragher v. City of Boca Raton*,
    524 U.S. 775, 118 S. Ct. 2275 (1998) ...............................................................24

*Farrar v. Town of Stratford*,
    537 F. Supp. 2d 332 (D. Conn. 2008) ...............................................................16

*Ferraro v. Kellwood Co.*,
    No. 03 Civ. 8492 (SAS),
    2004 U.S. Dist. LEXIS 23482 (S.D.N.Y. Nov. 16, 2004),
    *aff'd*, 440 F.3d 96 (2d Cir. 2006) ....................................................................24

*Fleming v. Verizon N.Y., Inc.*,
    419 F. Supp. 2d 455, (S.D.N.Y. 2005) ...............................................................26

*Fletcher v. Palazzo*,
    151 F.A'ppx. 73 (2d Cir. 2005) ..........................................................................38

*Forsyth v. Fed'n Employment Guidance Serv.*,
    409 F.3d 565 (2d Cir. 2005) ..............................................................................10

*Fisher v. Vassar Coll.*,
    114 F.3d 1332 (2d Cir. 1997).....................................................................6, 7, 29

*Galabya v. N.Y. City Bd. of Educ.*,
    2002 F.3d 636 (2d Cir. 2000)..............................................................................27

*Galdieri-Ambrosini v. National Realty & Dev. Corp.*,
    136 F.3d 276 (2d Cir. 1998) ..........................................................................7, 20

*Gallo v. Second Taxing Dist.*,
    507 F. Supp. 2d 164 (D. Conn. 2007) ................................................................40

*Gant v. Wallingford Bd. of Educ.*,
    195 F.3d 134, (2d Cir. 1999) ................................................................................6

*Garber v. N.Y.P.D.*,
    No. 95 Civ. 2516 (JFK),
    1997 U.S. Dist. LEXIS 12590 (S.D.N.Y. Aug. 21, 1997),
    *aff'd*, 159 F.3d 1346 (2d Cir. 1998) ..................................................................34

*Garrett v. Garden City Hotel*,
    No. 05 Civ. 0962 (JFB)(AKT),
    2007 U.S. Dist. LEXIS 31106 (E.D.N.Y. Apr. 19, 2007)...................................19

*Gibson v. State of Conn. Judicial Dep't Court Support Servs. Div.*,
    No. 3:05 Civ. 1396 (JCH),
    2007 U.S. Dist. LEXIS 30950 (D. Conn. April 25, 2007)...................................20

*Goenaga v. March of Dimes Birth Defects Found.*,
    51 F.3d 14 (2d Cir. 1995) ....................................................................................14

*Grennan v. Nassau County*,
    No. 04 Civ. 2158 (DRH)(WDW),
    2007 U.S. Dist. LEXIS 23087 (E.D.N.Y. Mar. 29, 2007)....................................32

*Harris v. Forklift Sys.*,
    510 U.S. 17, 114 S. Ct. 367 (1993) .......................................................................23

*Henry v. Wyeth Pharms., Inc.*,
    No. 05 Civ. 8106 (CM),
    2007 U.S. Dist. LEXIS 57921 (S.D.N.Y. July 26, 2007) (J. McMahon)..............10

*Holtz v. Rockefeller & Co.*,
    258 F. 3d 62 (2d Cir. 2001) ...................................................................................26

*Jackson v. City Univ. of N.Y.*,
    No. 05 Civ. 8712 (JSR),
    2006 U.S. Dist. LEXIS 43338 (S.D.N.Y. June 26, 2006) .....................................30

*James v. New York Racing Ass'n*,
    233 F.3d 149 (2d Cir. 2000) .....................................................................................7

*Jessamy v. City of New Rochelle*,
    292 F. Supp. 2d 498 (S.D.N.Y. 2003) ...................................................................24

*Jones v. R.R. Donnelley & Sons Co.*,
    541 U.S. 369, 124 S. Ct. 1836 (2004) ...................................................................11

*Johnson v. Railway Express Agency, Inc.*,
    421 U.S. 454, 95 S. Ct. 1716 (1975) .....................................................................11

*Jute v. Hamilton Sundstrand Corp.*,
    420 F.3d 166 (2d Cir. 2005) .....................................................................................7

*Kaplan v. Multimedia Entm't, Inc.*,
    No. 03 Civ. 0805C(F),
    2008 U.S. Dist. LEXIS 18262 (W.D.N.Y. March 5, 2008)...................................30

*Krinsky v. Abrams*,
    No. 01 Civ. 5052 (SLT)(LB),
    2007 U.S. Dist. LEXIS 38376 (E.D.N.Y. May 25, 2007)....................................31

*Lapsley v. Columbia Univ. Coll. of Physicians & Surgeons*,
    999 F. Supp. 506 (S.D.N.Y. 1998).........................................................................20

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*,
   No. 95 Civ. 0202 (SAS),
   1997 U.S. Dist. LEXIS 16151 (S.D.N.Y. Oct. 14, 1997)....................................................24

*Lennon v. New York City*,
   392 F. Supp. 2d 630 (S.D.N.Y. 2005) ................................................................................10

*Livington v. Adecco*,
   No. 03 Civ. 4871 (DRH) (ETB),
   2005 U.S. Dist. LEXIS 43346 (E.D.N.Y. Sept. 21, 2005) ...................................................8

*Long v. AT&T Info. Sys. Inc.*,
   733 F. Supp. 188 (S.D.N.Y. 1990)........................................................................................8

*Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*,
   842 F.2d 590 (2d Cir. 1988) ...............................................................................................19

*Meiri v. Dacon*,
   759 F.2d 989 (2d Cir. 1985) .................................................................................................5

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792, 93 S. Ct. 1817 (1973) .........................................................................6, 12, 45

*Moreno v. Town of Huntington*,
   No. 05 Civ. 2627 (LDW)(AKT),
   2008 U.S. Dist. LEXIS 21642 (E.D.N.Y. Mar. 18, 2008)...................................................16

*Morrison v. Potter*,
   363 F. Supp. 2d 586 (S.D.N.Y. 2005) (J. McMahon) ........................................................27

*Nicholas v. NYNEX, Inc.*,
   929 F. Supp. 727 (S.D.N.Y. 1996).................................................................................38, 39

*Petrosino v. Bell Atl.*,
   385 F.3d 210 (2d Cir. 2004) ................................................................9, 17, 24, 36, 37, 40

*Phillips v. General Dynamics Corp.*,
   811 F. Supp. 788 (N.D.N.Y. 1993) .....................................................................................36

*Plumey v. New York*,
   389 F. Supp. 2d 491 (S.D.N.Y. 2005) .................................................................................11

*Pugni v. Reader's Digest Ass'n*,
   No. 05 Civ. 8026 (CM),
   2007 U.S. Dist. LEXIS 26284 (S.D.N.Y. Apr. 5, 2007) (J. McMahon) ..............................30

*Ramos v. City of N.Y.*,
   No. 96 Civ. 3783 (DLC),
   1997 U.S. Dist. LEXIS 10538 (S.D.N.Y. Jul. 21, 1997)......................................................19

*Reeves v. Sanderson Plumbing Products, Inc.,*
  530 U.S. 133, 120 S. Ct. 2097 (2000) ................................................................. 6, 7, 15, 46

*Reyes v. N.Y. State Office of Children & Family Servs.,*
  No. 00 Civ. 7693 (SHS),
  2003 U.S. Dist. LEXIS 12644 (S.D.N.Y. July 22, 2003),
  *aff'd,* 109 F. App'x 466 (2d Cir. 2004) ................................................................ 32, 33, 34

*Richardson v. NY State Dep't of Corr. Serv.,*
  180 F.3d 426, (2d Cir. 1999) ................................................................................49

*Schachner v. Beth Isr. Med. Ctr., North Div.,*
  14 F. Supp. 2d 468, (S.D.N.Y. 1998) ......................................................................12

*Scotto v. Almenas,*
  143 F.3d 105, (2d Cir. 1998) ..................................................................................5

*Sinclair v. City of N.Y.,*
  No. 06 Civ. 0141 (WHP),
  2008 U.S. Dist. LEXIS 29033 (S.D.N.Y. Apr. 9, 2008) .....................................26

*Slattery v. Swiss Reinsurance Am. Corp.,*
  248 F.3d 87 (2d Cir. 2001) ....................................................................................33

*Spence v. Md. Cas. Co.,*
  995 F.2d 1147 (2d Cir. 1993) .............................................................................8, 36

*Stembridge v. City of N.Y.,*
  88 F. Supp. 2d 276 (S.D.N.Y. 2000) ....................................................................25

*Stepheny v. Brooklyn Hebrew Sch. for Special Children,*
  356 F. Supp. 2d 248 (E.D.N.Y. 2005) ..................................................................25

*Stetson v. NYNEX Serv. Co.,*
  995 F.2d 355 (2d Cir. 1993) .............................................................................36, 37

*St. Mary's Honor Ctr. v. Hicks,*
  509 U.S. 502, 113 S. Ct. 2742 (1993) ...........................................................7, 46, 48

*Sundaram v. Brookhaven Nat'l Labs.,*
  424 F. Supp. 2d 545 (E.D.N.Y. 2006) ....................................................................8

*Ternullo v. Reno,*
  8. F. Supp. 2d 186 (N.D.N.Y. 1998) ......................................................................36

*Texas Dep't of Cmty. Affairs v. Burdine,*
  450 U.S. 248, 101 S. Ct. 1089 (1993) .......................................................7, 13, 17, 40

*Tung v. Texaco, Inc.,*
  150 F.3d 206 (2d Cir. 1998) ...................................................................................39

*Van Zant v. KLM Royal Dutch Airlines*,
  80 F.3d 708 (2d Cir. 1996) ...................................................................................10

*Wilkins v. N.Y. City Dep't of Probation*,
  No. 98 Civ. 6611 (DAB)
  2001 U.S. Dist. LEXIS 2621 (S.D.N.Y. Mar. 13, 2001)....................................10

*Williams v. Bd. of Educ.*,
  972 F. Supp. 248 (S.D.N.Y. 1997)......................................................................10

*Williams v. R.H. Donnelley Corp.*,
  368 F.3d 123 (2d Cir. 2004) ........................................................... 6, 12, 15, 45

*Wilson v. Fairchild Republic Co.*,
  143 F.3d 733 (2d Cir. 1998) ...............................................................................26

## STATUTES

29 U.S.C. § 1658........................................................................................................11

42 U.S.C. § 2000e *et seq.* ("Title VII")...............................................................1, 9, 10

42 U.S.C. § 1981 *et seq.* ("§ 1981") ..........................................................................1, 9

New York Executive Law § 296 *et seq.* ("NYSHRL")...........................................1, 9, 10

N.Y.C. Admin. Code §§ 8-107(a), 8-502 *et seq.* ("NYCHRL") ...........................1, 9, 10

NYSHRL ......................................................................................................................9

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 56(c) .........................................................................5

N.Y. C.P.L.R. § 214(2) ..............................................................................................10

## PRELIMINARY STATEMENT

Defendant The McGraw-Hill Companies, Inc. ("McGraw-Hill" or "Defendant"), submits this Memorandum of Law in Support of its Motion for Summary Judgment as to the claims brought against it by Plaintiffs Giovanna Henson ("Henson"), Jesan Spencer ("Spencer"), and Brenda Curtis ("Curtis") ("collectively Plaintiffs").   Defendant is not moving for summary judgment as to the claims brought by Plaintiff Jannie Pilgrim.

Plaintiffs bring this action against their former employer alleging that they were discriminated against because of their race (African American) and retaliated against in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 *et seq.* ("§ 1981"), the New York State Human Rights Law, Executive Law § 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107(a), 8-502 *et seq.* ("NYCHRL"). (Complaint ("Compl.") ¶ 3.)  (A copy of the Complaint cited herein is attached to the Declaration of Gregory I. Rasin, Esq. submitted herewith in support of Defendant's motion ("Rasin Decl.") as Ex. L.) For the reasons set forth below, Defendant is entitled to summary judgment with respect to those claims as to these three Plaintiffs.

## PLAINTIFF HENSON

Henson alleges that during the last two years of her employment, she applied for but was denied five promotions on account of her race and that an "equally or less qualified Caucasian" was selected for all but one of the positions.  (Rasin Decl. Ex. L ¶ 45; Henson Tr. 103-4.)  (Pages from the depositions of Plaintiffs Henson, Spencer and Curtis cited herein are attached to the Rasin Decl. as Exhibits A, B and C, respectively.)   She further alleges that, prior to her resignation in August 2005, she complained to her supervisor, Sheila O'Neill, Vice President of Human Resources in the Corporate Segment, about discrimination, but thereafter, she continued

to be denied promotions in retaliation for her complaints.  (Rasin Decl. Ex. L ¶¶ 44, 45; Henson Tr. 70, 74-76, 139-40.)

Henson's claims fail as a matter of law for the following reasons:

(1)     Certain of Henson's failure to promote claims are time-barred;

(2)     Henson cannot demonstrate any discriminatory motive as to any of the challenged positions.  With respect to two of the positions to which Henson applied, Defendant selected the best candidates for the positions based on race-neutral criteria and Henson cannot demonstrate that a discriminatory motive tainted the selection processes.  For the other three positions, Henson fails to meet her burden to adduce sufficient evidence of her applications to these positions; and

(3)     Henson cannot establish a *prima facie* case of retaliation because none of her purported complaints constitute protected activity, and even assuming that they did, there is no causal connection between her alleged protected activity and any challenged employment action.

## PLAINTIFF SPENCER

Taking Plaintiff Spencer's race discrimination claims in the light most favorable to her, she asserts that certain conduct, such as cursing and other impolite behavior, by her supervisor, Ken Caruso, created a hostile work environment and that Caruso discriminatorily reduced her job responsibilities when he began supervising her in February 2005.  (Rasin Decl. Ex. L ¶¶ 49-51; Spencer Tr. 72-76, 95-96, 129-32.)  Spencer further claims that after she complained to Caruso's supervisor, Brett Marschke, the Vice President of Human Resources for Information and Media Services ("IMS"), and O'Neill, about Caruso, Caruso retaliated against her by giving her a negative performance evaluation, reducing her job responsibilities to clerical functions, and causing her to be transferred to the same position in a different division, which she

inappropriately characterizes as a demotion. (Rasin Decl. Ex. L ¶¶ 50-51; Spencer Tr. 80-82, 115.)  Finally, Spencer contends she was forced to resign.  (Rasin Decl. Ex. L ¶ 51; Spencer Tr. 235-36.)

      Spencer's claims fail as a matter of law for the following reasons:

      (1)    The alleged conduct upon which Spencer premises her hostile work environment claim is legally insufficient to support such a claim.  In addition, Spencer did not allege such a claim in her EEOC Charge of Discrimination ("EEOC Charge");

      (2)    Spencer cannot establish a *prima facie* case of discrimination with respect to the alleged change in her duties because there is no evidence that her duties were significantly diminished or that any alleged change constituted an adverse employment action.  Further, to the extent that any change in her duties occurred, Defendant had legitimate, nondiscriminatory reasons to reduce them, namely her demonstrated and widely known poor performance in those duties she claims were reduced; and

      (3)    Spencer cannot establish a *prima facie* case of retaliation with respect to her performance evaluation, the alleged change in her duties or her transfer as none of these actions constitute materially adverse employment actions sufficient to establish a *prima facie* case of retaliation and there is no causal connection between any of these actions and any alleged protected activity.  Additionally, Defendant had legitimate, nonretaliatory reasons for the challenged actions and Spencer cannot prove that these reasons are a pretext for discrimination.

## PLAINTIFF CURTIS

      Plaintiff Curtis alleges that during her employment with McGraw-Hill she suffered discriminatory treatment due to her race with respect to employment benefits and performance evaluations which negatively impacted her compensation.  (Rasin Decl. Ex. L ¶ 53.)  She further alleges that she was discriminated against with respect to positions she applied for after her

employment with McGraw-Hill ended that purportedly went to pre-selected Caucasian applicants. (Rasin Decl. Ex. L ¶ 54.) Finally, Curtis alleges that in response to her complaints about disparate treatment, McGraw-Hill retaliated against her by not hiring her for positions for which she applied after her employment with McGraw-Hill ended and by providing her with a negative recommendation letter. (Rasin Decl. Ex. L ¶¶ 53-55.)

Curtis's claims fail as a matter of law for the following reasons:

(1)    All of Curtis's claims arising prior to September 14, 2005 are barred by the general release, waiving all claims against McGraw-Hill, she signed after she was advised of her dismissal from McGraw-Hill;

(2)    Curtis cannot establish a *prima facie* case of discriminatory failure to hire her for positions to which she applied, as she was not qualified for certain positions and she was denied other positions for reasons which do not give rise to an inference of discrimination. Additionally, McGraw-Hill had legitimate, nondiscriminatory reasons for its hiring decisions, selecting the best candidates for each of the positions to which Curtis applied based on their qualifications and experience, irrespective of race. Curtis cannot establish that McGraw-Hill's legitimate reasons for selecting the other candidates are a pretext for discrimination; and

(3)    Curtis cannot establish a *prima facie* case of retaliation with respect to either the denial of positions to which she applied or the receipt of a negative letter of reference. McGraw-Hill had a legitimate non-discriminatory reason for its decision not to hire Curtis, *i.e.*, Curtis's qualifications versus those of the candidate who was hired, and she cannot show any such reasons are a pretext for retaliation. Further, no reasonable trier of fact could find that the recommendation letter, which acknowledges Curtis's consistently satisfactory performance and was even revised to reflect *her* suggested changes, constitutes an adverse employment action.

In sum, none of the Plaintiffs can maintain causes of action for race discrimination or retaliation as a matter of law, their Complaint should be dismissed, with prejudice.

## STATEMENT OF FACTS

The statement of facts set forth in Defendant's Rule 56.1 Statement of Undisputed Material Facts is incorporated herein by reference.

## ARGUMENT

### SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF DEFENDANT ON ALL OF PLAINTIFFS' CLAIMS

**A.    SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides for the granting of summary judgment where "there is no genuine issue as to any material fact [such that] the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  Summary judgment is appropriate when a party fails to make a showing sufficient to establish an element essential to that party's case and with respect to which that party bears the burden of proof.  *See Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.  The non-moving party may not rely on "conclusory allegations or unsubstantiated speculation."  *Bogdan v. N.Y. City Transit Auth.*, No. 02 Civ. 09587 (GEL), 2005 U.S. Dist. LEXIS 9317, at *9 (S.D.N.Y. May 13, 2005), *citing Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).  Rather, to survive summary judgment, the non-moving party must make a "showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

Based on the undisputed material facts in this case, there is no evidence on which a jury could reasonably find for Plaintiffs on any of their race discrimination or retaliation claims. Accordingly, summary judgment in favor of McGraw-Hill is appropriate.

**B.      APPLICABLE LEGAL STANDARDS FOR PLAINTIFFS' SUBSTANTIVE CLAIMS**

      **1.      Standard For Evaluating Plaintiffs' Race Discrimination Claims**

Courts evaluate claims of race discrimination using the three-step burden-shifting framework first established in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973). *See Cruz v. Coach Stores*, *Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000) (analysis of state and city law claims parallels analysis of Title VII); *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 146 (2d Cir. 1999) (same analysis for § 1981).   A plaintiff has the initial burden of proving a *prima facie* case of race discrimination by a preponderance of the evidence. *McDonnell-Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824.

To establish a *prima facie* case of discrimination, a plaintiff must show that: (1) she belongs to a protected class; (2) she was competent to perform the job or was satisfactorily performing the duties required by her position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination based on her race. *Id.*; *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005); *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 (2d Cir. 2004) (adapting *prima facie* case of discrimination for failure to promote or hire claims).

If a plaintiff establishes her *prima facie* case, the defendant must articulate — though not prove — a legitimate, non-discriminatory reason for the challenged employment action.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 140 (2000); *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1335-36, 120 S. Ct. 2097, 2104-05 (2d Cir. 1997).  Because the ultimate burden

of persuasion lies with the plaintiff, the employer may satisfy its burden of production with sufficient evidence of a legitimate non-discriminatory reason for its action. *Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093 (1981).

The burden then shifts to plaintiff to prove that the defendant's proffered reason was pretextual. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 526 (1993). The plaintiff must prove by a preponderance of the evidence not only that the legitimate reason offered by the defendant was a pretext for discrimination, but also that intentional discrimination was the real reason for the defendant's action. *Hicks*, 509 U.S. at 526, 113 S. Ct. at 2757. Evidence contradicting the employer's given reason — without more — cannot meet the plaintiff's burden. *See Fisher*, 114 F.3d at 1339 ("a plaintiff cannot prevail without establishing intentional discrimination by a preponderance of the evidence"). Thus, to defeat summary judgment, Plaintiffs must "point to evidence that reasonably supports a finding of prohibited discrimination." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

### 2. <u>Standard For Evaluating Plaintiffs' Retaliation Claims</u>

Like substantive discrimination claims, retaliation claims are evaluated under the three-step burden-shifting *McDonnell-Douglas* analysis outlined above. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Initially, plaintiff must establish a *prima facie* case of retaliation, by demonstrating that: (1) she was engaged in protected activity known to defendant; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action, *i.e.* that a retaliatory motive played a part in the adverse action. *Cifra v. General Electric Co.*, 252 F.3d 205, 216 (2d Cir. 2001); *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

Further, to establish a *prima facie* case of retaliation, "plaintiff must show that the person who engaged in the adverse conduct had *notice* of the protected activity." *Long v. AT&T Info. Sys., Inc.,* 733 F. Supp. 188, 205 n.22 (S.D.N.Y. 1990) (emphasis added). Courts hold that a lack of knowledge of protected activity on the part of the employees responsible for the alleged adverse employment action demonstrates a lack of a causal connection between the challenged actions and protected activity and dismiss retaliation claims accordingly. *See Campbell v. Home Depot U.S.A., Inc.,* No. 03. Civ. 1421, 2006 U.S. Dist. LEXIS 14958, at *38-39 (S.D.N.Y. Mar. 30, 2006) (internal citations and quotation marks omitted) (granting summary judgment to defendant on plaintiff's retaliation claim where supervisors allegedly responsible for plaintiff's termination lacked knowledge of her complaints), *aff'd* 221 F. App'x 21 (2d Cir.), *cert. denied,* - U.S. -, 128 S. Ct. 107 (2007); *Sundaram v. Brookhaven Nat'l Labs.,* 424 F. Supp. 2d 545, 584 (E.D.N.Y. 2006) ("plaintiff has failed to establish a *prima facie* case of retaliation because there is no evidence that any of the decision-makers were aware of the plaintiff's protected activity and thus no evidence of a causal connection between the protected activity and the defendant's hiring decision"); *Livingston v. Adecco,* No. 03 Civ. 4871 (DRH) (ETB), 2005 U.S. Dist. LEXIS 43346, at *44-46 (E.D.N.Y. Sept. 21, 2005) (finding plaintiff fails to raise genuine issue of fact on retaliation claims where those responsible for the adverse employment actions not aware of letter of complaint at the time of their actions.)

### 3.       <u>Standard For Evaluating Plaintiff Spencer's Constructive Discharge Claim</u>

As a matter of law, a constructive discharge claim should be dismissed unless there is sufficient evidence which would permit the trier of fact to infer that an employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the plaintiff's position would feel compelled to resign. *Spence v. Md. Cas. Co.*, 995 F.2d 1147 (2d Cir. 1993). The first element of analysis for a constructive discharge claim requires that a

plaintiff "demonstrate that the employer's actions were deliberate and not merely negligent or ineffective," while the second requires a showing that "the employer's deliberate actions rendered the employee's work conditions so intolerable as to compel resignation." *Petrosino v. Bell Atl.*, 385 F.3d 210, 230 (2d Cir. 2004) (citations and internal quotations omitted).  While Plaintiff Spencer claims she was constructively discharged, courts in this Circuit have dismissed constructive discharge claims where plaintiffs have alleged more egregious working conditions than those alleged here.  *See, e.g.*, *Esterquest v. Booz Allen & Hamilton, Inc.*, No. 97 Civ. 6957 (LMM), 2002 U.S. Dist. LEXIS 2545, at *26 (S.D.N.Y. Jan. 19, 2002) (dismissing constructive discharge claim where plaintiff alleged history of being passed over for promotions and not being given written performance evaluations or annual salary increases).

## C.     PLAINTIFF GIOVANNA HENSON

### 1.     Certain Of Henson's Discrimination Claims Are Time-Barred

Plaintiff Henson alleges that she applied for the following positions which she claims she was denied due to her race in violation of Title VII, § 1981, the NYSHRL, and the NYCHRL (*see* Rasin Decl. Ex. L ¶ 44; Henson Tr. 70, 103-4): (i) Talent Acquisition Specialist in the Corporate Segment in June 2003 (Henson Tr. 105); (ii) Human Resources ("HR") Representative at IMS in September 2003 (Henson Tr. 115); (iii) HR Representative at MHE between October and December 2003 (Henson Tr. 111); (iv) Recruiting Specialist, Campus Recruiting at S&P in November 2004 (Henson Tr. 124); and (v) HR Representative at S&P in June 2005 (Henson Tr. 119).

Henson's failure to promote claims regarding these positions are time-barred to the extent they concern events which occurred more than 300 days before she filed her EEOC Charge (under Title VII), more than three years before she filed her lawsuit (under NYSHRL and NYCHRL), and/or more than four years before she filed her lawsuit (under § 1981).  The

"[t]imely filing of a charge of discrimination with the EEOC is a prerequisite to filing a Title VII complaint in federal court." *Wilkins v. N.Y. City Dep't of Probation*, No. 98 Civ. 6611 (DAB), 2001 U.S. Dist. LEXIS 2621, at \*5-6 (S.D.N.Y. Mar. 13, 2001).  In New York, a plaintiff has 300 days from the time of the allegedly discriminatory act in which to file a Title VII charge with the Equal Employment Opportunity Commission ("EEOC").  42 U.S.C. § 2000e-5(e)(1); *see also Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996); *Henry v. Wyeth Pharms., Inc.*, No. 05 Civ. 8106 (CM), 2007 U.S. Dist. LEXIS 57921, at \*18 (S.D.N.Y. July 26, 2007) (J. McMahon); *Lennon v. N.Y. City*, 392 F. Supp. 2d 630, 638-39 (S.D.N.Y. 2005); *Williams v. Bd. of Educ.*, 972 F. Supp. 248, 249-50 (S.D.N.Y. 1997).  Since Henson filed her Charge with the EEOC on December 16, 2005,  any employment actions taken prior to February 19, 2005 are time-barred under Title VII.  (*See* Rasin Decl. Ex. M)  As such, only one of Henson's failure to promote claims – her claim regarding the HR Representative position at S&P (to which she applied in or about June 2005) – survives under Title VII.

In addition, any state and city law discrimination claims based on alleged denials of promotion which occurred prior to July 23, 2004 are time-barred under the NYSHRL and the NYCHRL.  The NYSHRL and the NYCHRL give complainants three years from the date of any allegedly discriminatory acts to file suit.  *See* N.Y. C.P.L.R. § 214(2); N.Y. City Admin. Code § 8-502(d); *Henry*, 2007 U.S. Dist. LEXIS 57921, at \*19; *Forsyth v. Fed'n Employment Guidance Serv.*, 409 F.3d 565, 572 (2d Cir. 2005).  Therefore, Henson's state and city law failure to promote claims regarding the positions of Talent Acquisition Specialist, HR Representative at IMS, and HR Representative at MHE are time-barred under the NYSHRL and NYCHRL, and only her claims regarding the Recruiting Specialist and HR Representative positions at S&P survive under those statutes.

Additionally, all of Henson's discrimination claims regarding denials of promotion which occurred prior to July 23, 2003 are barred by the four year statute of limitations applicable to claims brought under § 1981.  *See* 29 U.S.C. § 1658; *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83, 124 S. Ct. 1836, 1845-46 (2004) (clarifying that claims under § 1981 which are made actionable by the 1991 amendments to the statute have a four year statute of limitations); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 466-67, 95 S. Ct. 1716, 1723-24 (1975) (noting § 1981 is a separate and independent remedy from Title VII, and is not tolled by the filing of an EEOC Charge); *Plumey v. New York*, 389 F. Supp. 2d 491, 497 (S.D.N.Y. 2005) (same).   Since Henson filed this lawsuit on July 23, 2007, her § 1981 discrimination claims based on events prior to July 23, 2003 are time-barred.  Thus, Henson's claim regarding the failure to promote her to the Talent Acquisition Specialist position in or about June 2003 is barred by the statute of limitations for § 1981.

### 2.   Henson's Claims Of Discriminatory Failure To Promote And Disparate Treatment Fail As A Matter Of Law

To the extent that Henson's failure to promote discrimination claims are not barred by the applicable limitations periods, they are without merit.  As discussed in Point C(1) (*supra* p. 9), Henson alleges that between 2003 and 2005 she was discriminatorily denied promotions on five occasions on account of her race and that an equally or less qualified Caucasian was selected for all but one of the positions.  (Henson Tr. 103-4.)  However, Henson cannot establish a *prima facie* case of failure to promote.  Moreover, contrary to Henson's allegations, Defendant selected the best candidates for each of the positions Henson sought based on the candidates' superior qualifications and experience.   There is no evidence demonstrating that intentional discrimination played a part in the selection process or that Defendant's legitimate reasons for

selecting the other candidates over Henson are pretextual.  As such,  Henson has failed to carry

her burden of persuasion for all five of her failure to promote claims and they must be dismissed.

     To establish a *prima facie* case in the hiring context, Henson must show: (1) that she is in

a protected class; (2) that she applied for and was qualified for the position that McGraw-Hill

was seeking to fill; (3) that, despite her qualifications, she was rejected; and (4) that the

circumstances surrounding the employment decision give rise to an inference of unlawful

discrimination.  *Schachner v. Beth Isr. Med. Ctr., North Div.*, 14 F. Supp. 2d 468, 470 (S.D.N.Y.

1998).

     a.   Human Resources Representative at S&P

     Henson claims that she applied for the position of Human Resources Representative at

S&P in June 2005 but "[t]he position was given to a pre-selected equal or less qualified

Caucasian female." (Rasin Decl. Ex. L ¶ 44; Henson Tr. 119-24.)  McGraw-Hill selected Jessica

Brookins for the position based on her superior qualifications.

     Henson fails to establish a *prima facie* case of discriminatory failure to promote with

respect to the Human Resources Representative at S&P position because there is no genuine

issue of disputed fact giving rise to an inference of discrimination.  *See Williams*, 368 F.3d at

126, *citing McDonnell-Douglas*, 411 U.S. at 802.  The hiring manager for the position, Richard

Fisher, Vice President of Humans Resources for S&P, hired a Hispanic female, Jessica Brookins,

after interviewing each of the candidates including Henson. (Fisher Tr. 169-70.)  (Pages from

Richard Fisher's deposition transcript cited herein are attached to the Rasin Decl. as Ex. I.)

Fisher found that Brookins was the strongest candidate because, among other things, she had

received higher ratings on her performance evaluations. (Fisher Tr. 169-70.)  Further, the

position sought was a grade level 16, the same grade level that Brookins had achieved, but three

grade levels higher than Henson's, who was at grade level 13. (Henson Tr. 119, 124.)  Fisher

considered the candidates' grade levels because he felt they depicted the level of responsibility the candidates held in their current positions. (Fisher Tr. 172.)  Accordingly, Brookins was hired as the best candidate based on perceived superiority in these race-neutral criteria.

For the same reasons, McGraw-Hill has satisfied its burden of articulating a legitimate, nondiscriminatory rationale for not hiring Henson into the HR Representative position.  *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093 (employer has only a burden of production, while the burden of persuasion lies with plaintiff at all times).  As demonstrated, Fisher selected Brookins because she was a higher grade level than Henson, the same grade level as the position, and she had received better performance appraisals than Henson.  (Fisher Tr. 169-70, 172.)  Fisher's nondiscriminatory reasoning fulfills Defendant's burden.

Moreover, Henson cannot adduce evidence sufficient to create a genuine factual question as to whether Fisher's explanation is a pretext for discrimination.  A material issue of fact can be created in a situation – not present here – where "the plaintiff's credentials [are] so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). Defendant has rebutted any presumption of discriminatory animus by demonstrating that Brookins' credentials were superior to Henson's credentials and, more importantly, that her stronger relevant credentials were the reason she was chosen over Henson for the position. *See also Alvarez v. Nicholson*, No. 03 Civ. 4173 (RCC), 2005 U.S. Dist. LEXIS 45744, at *14 (S.D.N.Y. Aug. 3, 2005) (evidence that a more qualified candidate was selected for the open position will rebut any presumption that discrimination was involved).

Further, Henson offers mere speculation as to Brookins' qualifications for the position as she never supervised her and admittedly knows nothing about Brookins' relevant work experience or background. (Henson Tr. 122-23.) Speculation, however, will not satisfy Henson's burden of persuasion. *See id.* at *16-17 (plaintiff's personal belief that she was more qualified for the position alone is insufficient to rebut defendants' nondiscriminatory reasons); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (plaintiff may not rely simply on conclusory statements, conjecture or surmise to prove discrimination).

Because Henson cannot rebut Defendant's legitimate, nondiscriminatory reasons for Brookins' hire, Plaintiff's discrimination claims with respect to this position should be dismissed.

b.   <u>Recruiting Specialist, Campus Recruiting at S&P</u>

Henson claims that she sought the position of Recruiting Specialist, Campus Recruiting at S&P in or about November 2004 but "[t]he position was assigned to a non-African American, from outside the company with less qualifications and experience than Henson." (Rasin Decl. Ex. L ¶ 44; Henson Tr. 124-30.) As discussed in Point C(1) (*supra* pp. 9-11), Henson's failure to promote claim regarding this position is time-barred under Title VII. To the extent that Henson's NYSHRL, NYCHRL and § 1981 claims regarding this position are timely, however, those claims nevertheless fail because Defendant selected a candidate with superior qualifications and more relevant experience than Henson under circumstances that could not conceivably give rise to an inference of discrimination, and, accordingly, her claims regarding this position should be dismissed.

Because no discriminatory motive can be gleaned from the selection process for this position, Henson fails to establish a *prima facie* case of discriminatory failure to promote. *See R.H. Donnelly*, 368 F.3d at 126.  The hiring manager, Deborah O'Connor, offered the position to Blessing Mariano, an Asian female who had previous extensive experience in the area of campus recruiting at a prestigious investment bank. (*See* Rasin Decl. Ex. U.) The position involved long hours and dedication, traveling to different college campuses on the East Coast, and attending career fairs, which were Mariano's primary responsibilities in her prior job. (Rasin Decl. Ex. U; O'Connor Aff. ¶ 4.) (A copy of the Affidavit of Deborah O'Connor is attached to the Rasin Decl. as Ex. UU).  Another main component of the position was organizing first and final round interviews, and thus, experience working with university career services offices was preferred. (O'Connor Aff. ¶ 4.)  After interviewing the candidates, O'Connor found that Henson did not have any experience in organizing campus interview schedules or working with career services offices. (O'Connor Aff. ¶ 5; *see also* Henson Tr. 40-48 (description of job responsibilities).) Moreover, Henson had previously applied for this position but withdrew from consideration. (Henson Tr. 124-25.)  Mariano, on the other hand, had been doing the exact same job as this position at her prior employer.  (O'Connor Aff. ¶ 5.)  O'Connor felt that because Mariano had extensive experience in campus recruiting, while Henson had none, Mariano was the best candidate for the position.  (O'Connor Aff. ¶¶ 5-6.)  O'Connor selected Mariano based on these race-neutral criteria. (O'Connor Aff. ¶¶ 5-6.)

O'Connor's determination that Mariano had more relevant experience for the position not only disposes of Henson's *prima facie* case, but also serves as the legitimate, nondiscriminatory rationale for rejecting Henson. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. at 143, 120 S. Ct. 2097, 2106 (2000).  O'Connor was free to select the candidate she felt was the most

suitable for the position based on her perception of their qualifications so long as the selection was not motivated by discriminatory animus. *See Byrnie*, 243 F.3d at 104 ("[T]here is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview."); *see also*, *Farrar v. Town of Stratford*, 537 F. Supp. 2d 332, 347 (D. Conn. 2008) (dismissing claim where defendant based decision on resumes and impressions during interviews because "the court must respect the employer's unfettered discretion to choose among qualified candidates" based on such "subjective" criteria). There is no such proof of discriminatory animus on O'Connor's part and her nondiscriminatory determination clearly satisfies Defendant's burden of production.

Moreover, Henson cannot present any evidence calling into question Defendant's legitimate reasons for selecting Mariano over her for the position. Henson makes conclusory assertions that Mariano is less qualified and experienced than Henson. (Rasin Decl. Ex. L ¶ 44; Henson Tr. 124-30.) However, a plaintiff's "mere contention" that she was more qualified than the candidate chosen, or at least equally qualified, is not sufficient to show that the decision to hire the candidate was a mask for discrimination. *Moreno v. Town of Huntington*, No. 05 Civ. 2627 (LDW)(AKT), 2008 U.S. Dist. LEXIS 21642, at *19 (E.D.N.Y. Mar. 18, 2008), *citing Byrnie*, 243 F.3d at 103; *see also Dawson v. Bumble & Bumble*, 398 F.3d 211, 224 (2d Cir. 2005) ("[Plaintiff's] merely subjective assessment of her chances for promotion does not create an issue of fact as to whether [Defendant's] failure to promote [her] was motivated by discriminatory intent."). Henson does not have any personal knowledge as to Mariano's relevant recruiting experience and she has conceded that she does not know whether Mariano was qualified for the job. (Henson Tr. 130.) Further, Henson cannot produce any evidence that the hiring manager, O'Connor, was racially biased. *See, e.g.*, *Davis v. State Univ. of N.Y.*, 802 F.2d

638, 642 (2d Cir. 1986) (affirming dismissal of appellant-employee's failure to promote claim where she presented no evidence that decision-makers were racially biased).    Henson's conclusory assertions as to the candidates' relative qualifications do not suffice to withstand summary judgment.

Because a candidate with more relevant experience for the Recruiting Specialist position was chosen based on nondiscriminatory reasons, Henson cannot prove that racial animus tainted the decision not to promote her and her claims regarding this position must be dismissed.

c.    The Three Remaining Positions

Henson's claims as to the three remaining positions – Talent Acquisition Specialist in the Corporate Segment in June 2003, HR Representative at IMS in September 2003 and HR Representative at MHE in October to December 2003 – are also subject to summary dismissal. Any claims regarding the Talent Acquisition Specialist position are time-barred in their entirety. Plaintiff's claims regarding the two HR Representative positions are untimely under Title VII and New York State and City law.    To the extent any of these positions are not deemed untimely under the applicable statutes, however, Henson's failure to promote claims still fail as a matter of law because she fails to provide evidence of her applications to these positions sufficient to establish a *prima facie* case of discrimination.

The ultimate burden of persuasion lies with Henson at all times to set forth her *prima facie* case of discrimination. *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093. The second element of Henson's *prima facie* case of discriminatory failure to promote – that Plaintiff applied and was qualified for the job – cannot be established merely with speculation or evidence that she generally requested promotion consideration. *Petrosino v. Bell*, 385 F.3d 210, 226-27 (2d Cir. 2004) (dismissing plaintiff's claims where plaintiff could not adduce evidence of formal applications for the promotions and holding that proof of specific applications is required to

protect employers from the unfair burden of having to keep track of all employees who express any interest in promotion).  Henson has not provided any evidence of her applications to these positions.[1]  As such, Henson has failed her burden with respect to the Talent Acquisition Specialist, HR Representative at IMS, and HR Representative at MHE positions, and thus, her claims regarding these positions must be dismissed.

### 3.  Henson's Allegations Of Retaliation Are Without Merit

Henson claims that she complained to her supervisor, Sheila O'Neill, of race discrimination and that, in retaliation for her complaints to O'Neill, the hiring managers for the positions she sought rejected her. (Henson Tr. 70, 74-76, 139-40.)  These allegations fail as a matter of law for two reasons.  First, none of Henson's purported complaints constitute protected activity sufficient to establish a *prima facie* case of retaliation.  Second, even assuming that Henson had engaged in protected activity, which she did not, she cannot establish any causal connection between the alleged protected activity and the decisions not to promote her.

### a.  Henson Cannot Establish A *Prima Facie* Case Of Retaliation Because Her Purported Complaints Do Not Constitute Protected Activity

Henson alleges that she complained "all the time" to O'Neill that she was not "really happy" working at McGraw-Hill, that O'Neill saw her crying at her desk "on plenty of occasions," and that in 2004 or 2005, when O'Neill asked her why she was crying, she explained to O'Neill that she had not received a position for which she applied.  (Henson Tr. 70, 74-76.) She further alleges that she made a statement to O'Neill to the effect of "you don't know what it's like to be African American working at McGraw-Hill." (Henson Tr. 75.)  None of these alleged complaints of discrimination, even if made, constitute protected activity sufficient to establish a *prima facie* case of retaliation.

---

[1] McGraw-Hill has been unable to locate any record of Henson applying for these positions.

Henson's discontent with her job and general upset with being denied promotion constitute general complaints about working conditions unrelated to discrimination that will not serve to satisfy the first element of Henson's *prima facie* case of retaliation. *Garrett v. Garden City Hotel*, No. 05 Civ. 0962 (JFB)(AKT), 2007 U.S. Dist. LEXIS 31106, at *66-67 (E.D.N.Y. Apr. 19, 2007); *see, e.g.*, *Chacko v. DynAir Servs.*, No. 02 Civ. 9424, 2008 U.S. App. LEXIS 7397 (2d Cir. April 7, 2008) (affirming dismissal of retaliation claim where plaintiff questioned his employer's promotion policy but did not suggest that he was complaining of discrimination); *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988) (affirming appellant failed to establish *prima facie* case of retaliation where appellant's objections to employer's selection process neither pointed out discrimination against particular individuals nor discriminatory practices by the employer); *Cramer v. Pyzowski*, No. 04 Civ. 1122 (SLT)(SMG), 2007 U.S. Dist. LEXIS 38375 (E.D.N.Y. May 25, 2007) (dismissing retaliation claim where plaintiff made ambiguous complaint about his request for transfer because complaints about conduct other than discrimination are not protected activity); *Ramos v. City of N.Y.*, No. 96 Civ. 3783 (DLC), 1997 U.S. Dist. LEXIS 10538, at *6-7 (S.D.N.Y. Jul. 21, 1997) (holding that while there are no "magic words" plaintiff did not satisfy "protected activity" element of claim because he had told employer only that he was being treated unfairly, not that his unfair treatment was caused by being a member of a protected class).

Further, Henson's purported statement to O'Neill that, "she doesn't know what it's like to be African American working at McGraw-Hill" does not constitute protected activity, even if, in fact, it was stated as Henson testified. (Henson Tr. 75, 78-79.) O'Neill's denies that Henson ever made such a statement to her or complained to her about discrimination. (O'Neill Tr. 90, 148-50.) (Copies of pages from Sheila O'Neill's deposition transcript cited herein are attached to the

Rasin Decl. as Ex. G.)  Even assuming Henson made this statement, however, O'Neill did not

and could not have conceivably understood it to be a complaint of racially discriminatory

employment practices at McGraw-Hill.  (*Id.*)  The purported ambiguous comment does not

specify in what ways or through what practices Henson felt discriminated against, or even that

she had been discriminated against.  (*Id.*)  Rather, Henson's purported comment was allegedly

made during a conversation wherein she referenced various upsetting life events unrelated to her

employment such as the incident when she was robbed at gun point in Harlem. (Henson Tr. 75-

76.)  More importantly, Henson has admitted that she never told O'Neill or anyone at McGraw-

Hill that she believed she had been rejected for a position because of her race. (Henson Tr. 152.)

As such, Henson's purported ambiguous comment cannot possibly be construed as protected

activity sufficient to place McGraw-Hill on notice of any discrimination. *See, e.g.*, *Galdieri-*

*Ambrosini v. National Realty & Dev. Corp.* 136 F.3d 276, 292(2d Cir. 1998) ("[I]mplicit in the

requirement that the employer have been aware of the protected activity is the requirement that it

understood, or could reasonably have understood, that the plaintiff's opposition was directed at

conduct prohibited by Title VII."); *Lapsley v. Columbia Univ. Coll. of Physicians & Surgeons*,

999 F. Supp. 506, 524 (S.D.N.Y. 1998) (finding plaintiff did not engage in protected activity

when she stated to her supervisor "I would hate to feel that I was being discriminated against" in

response to learning she did not receive a promotion because such a passing remark does not rise

to the level of accusation); *see also Gibson v. State of Conn. Judicial Dep't Court Support Servs.*

*Div.*, No. 3:05 Civ. 1396 (JCH), 2007 U.S. Dist. LEXIS 30950, at *27-28, 30 (D. Conn. April 25,

2007) (holding that "ambiguous complaints that do not make the employer aware of alleged

discriminatory misconduct do not constitute protected activity" and finding that employee's two-

time use of the word discriminatory "[did] not automatically put the defendants on notice of any

discrimination based on a protected category, which is a critical requirement of a *prima facie* case of retaliation under Title VII").

        b.      <u>Even Assuming That Henson Had Engaged In Protected Activity, She Still Cannot Establish A *Prima Facie* Case of Retaliation As No Causal Connection Between Her Alleged Complaints And Any Adverse Employment Action Exists</u>

Henson's retaliation claims are subject to summary dismissal for yet another reason. There is no evidence that any of the hiring managers responsible for the positions Henson sought had knowledge of Henson's purported complaints to Ms. O'Neill. It is undisputed that Henson made no complaint of discrimination to any of the hiring managers or anyone other than O'Neill. (Henson Tr. 74.) And O'Neill testified that she never discussed Henson's applications for these positions with any of the hiring managers. (O'Neill Tr. 257-60.) Because O'Neill did not believe Henson to have made any complaints of discrimination to her (O'Neill Tr. 149), it is not conceivable for her to have discussed them with the hiring managers. The hiring managers had no knowledge of Henson's purported complaints, and Plaintiff can provide no evidence to the contrary. (Henson Tr. 74; O'Neill Tr. 257-60.) Because the hiring managers did not have knowledge of her alleged complaints of discrimination, Henson cannot demonstrate a causal connection between these alleged complaints and the failures to promote her.

Additionally, there is no causal link between Henson's alleged complaints to O'Neill and the failures to promote her, as these actions occurred in 2003, before she allegedly complained, and continued through 2005, irrespective of any complaints. "It is unreasonable to infer that the continuation of behavior that had preceded the filing of the plaintiff's complaint was somehow motivated by that complaint." *Castro v. N.Y. City Bd. of Educ. Personnel Dir.*, No. 96 Civ. 6314 (MBM), 1998 U.S. Dist. LEXIS 2863, at *26 (S.D.N.Y. Mar. 11, 1998). While the denial of promotions to only two of the five positions Henson allegedly sought – the Recruitment

Specialist, Campus Recruiting position in or about November 2004 and the HR Representative position at S&P in or about June 2005 – followed her alleged complaints to O'Neill, Henson was denied promotions to the other positions prior to her complaints, thereby disposing of any causal connection between the failures to promote her and her purported protected activity.

Because Henson fails to establish a causal connection between any protected activity and the decisions not to promote her, her retaliation claim with respect to these decisions fails as a matter of law.

**D.    PLAINTIFF JESAN SPENCER**

**1.    Defendant Is Entitled To Summary Judgment Dismissing Spencer's Race Discrimination And Hostile Work Environment Claims**

Spencer centers her claims on alleged conduct by her supervisor, Ken Caruso, which she asserts created a hostile and abusive work environment and reduced her job responsibilities. (Rasin Decl. Ex. L ¶¶ 49-51; Spencer Tr. 72-76, 95-96.)  Thus, taking Plaintiff's allegations in the light most favorable to her and assuming she has sufficiently pled claims of hostile work environment and race discrimination, these claims still fail as a matter of law for several reasons. No reasonable person would find that the alleged discriminatory conduct by Caruso created an environment sufficiently severe or pervasive to alter the conditions of Spencer's employment. Moreover, the Court should dismiss Spencer's claim that her duties were discriminatorily reduced because she cannot establish that any purported reduction in her duties was an adverse employment action sufficient for a *prima facie* case of race discrimination, or that her race was the real reason for the purported reduction.  Finally,  Spencer's hostile work environment claim should be dismissed because she omitted any such claim from her EEOC Charge, thereby failing to preserve it.

a.      The Facts Upon Which Spencer Premises Her Hostile Work Environment
Claims Are Legally Insufficient To Sustain Such A Claim

To prevail on a hostile work environment claim, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) (citations and internal quotation marks omitted). The standard for establishing a hostile work environment claim is high. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." *Harris*, 510 U.S. at 21, 114 S. Ct. at 370. Moreover, the claim fails unless plaintiff can demonstrate that the alleged actionable harassment was based on her protected characteristic. *See Alfano*, 294 F.3d at 374 (holding it is "axiomatic" that in order to establish a hostile work environment claim, plaintiff must demonstrate that the conduct occurred because of her protected characteristic).

Spencer appears to allege – in the most vague and conclusory terms – that she suffered a racially discriminatory hostile work environment based on the following conduct of Caruso: he used profane language in her presence including the words "shit," "fuck," and "bitch"; he treated her with a lack of respect; he shooed her out of his office and told her to just leave when he received another phone call; he did not greet her in the morning; and, on one occasion, he inappropriately touched himself in Spencer's presence. (Spencer Tr. 72-76, 95-96.)   No reasonable person would find that this conduct created an objectively hostile or abusive work environment due to race. Assuming for the purposes of this motion that this conduct occurred, none of it amounts to more than boorish behavior. Title VII neither prohibits mere impolite

23

behavior nor protects employees from the "ordinary tribulations of the workplace" lest it become a "general civility code" for the workplace. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84 (1998); *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) ("[W]e are mindful that Title VII does not establish a 'general civility code' for the American workplace . . . Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 95 CV 0202 (SAS), 1997 U.S. Dist. LEXIS 16151, at *8-11 (S.D.N.Y. Oct. 14, 1997) (dismissing plaintiff's hostile work environment claim because four or five instances where plaintiff's supervisor grabbed his crotch in front of plaintiff was not sufficiently severe).  (Hostile work environment claims under § 1981, the NYSHRL and the NYCHRL are analyzed under the same standards as Title VII. *See generally Cruz v. Coach Stores*, 202 F.3d 560, 565 n.1 & 570-72 (2d Cir. 2000).

Moreover, Spencer cannot show that any of the alleged harassment by Caruso was based on her race. *See Alfano*, 294 F.3d at 374; *Croswell v. Triborough Bridge & Tunnel Auth.*, No. 04 Civ. 2990 (NRB), 2007 U.S. Dist. LEXIS 58343, at *57 (S.D.N.Y. Aug. 7, 2007) ("[T]he absence of [conduct of an overtly racial character] is a factual omission that is necessarily fatal to a race-based hostile work environment claim") (*quoting Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 512 (S.D.N.Y. 2003).)  None of the profane language allegedly used by Caruso in Spencer's presence was racial in nature. *See Ferraro v. Kellwood Co.*, No. 03 Civ. 8492 (SAS), 2004 U.S. Dist. LEXIS 23482, at *33-34 (S.D.N.Y. Nov. 16, 2004) (noting plaintiff's supervisor screaming at her and insulting her with generic profanities was harassment of a neutral, nondiscriminatory tone) *aff'd*, 440 F.3d 96 (2d Cir. 2006).  Further, while Caruso admits that it is possible he may have inadvertently used the words "shit," "fuck," and "bitch" in Spencer's

presence, he only used the word "bitch" as an expletive in phrases like "son of a bitch" and not in reference to Spencer or any woman. (Caruso Tr. 102-8.)   (Copies of pages from Caruso's deposition transcript cited herein are attached to the Rasin Decl. as Ex. F.)   Indeed, Spencer admits that she never heard Caruso make a racial slur.  (Spencer Tr. 117.)   She further admits that Mr. Caruso never said "fuck you" to her or directed the word "bitch" toward her (Spencer Tr. 102, 158),  and that Mr. Caruso cursed in front of other non-African American employees. (Spencer Tr. 225-6.)   There is also no evidence that any of Caruso's other rude behavior had anything to do with race.

Courts have dismissed hostile work environment claims based on far more offensive and pervasive remarks and conduct than that alleged here. *See, e.g.*, *Stepheny v. Brooklyn Hebrew Sch. for Special Children*, 356 F. Supp. 2d 248, 264 (E.D.N.Y. 2005) (finding five racially offensive comments such as "white bitch" over the course of five months insufficient as a matter of law to establish hostile work environment claim); *Dorrilus v. St. Rose's Home*, 234 F. Supp. 2d 326, 335 (S.D.N.Y. 2002) (finding that supervisor's use of racially derogatory slur to refer to plaintiff on four or more occasions does not alter conditions of employment significantly enough to implicate Title VII); *Stembridge v. City of N.Y.*, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) (seven incidents over three years, including two instances of racial epithets uttered by supervisors toward plaintiff including directly calling plaintiff an "uppity nigger," while evincing racial hostility, do not establish a hostile work environment).  Spencer's allegations do not even approach the severity of these comments which other courts in this circuit have found insufficient to sustain a hostile work environment claim.

For all of the above reasons, Spencer's hostile work environment claim fails as a matter of law.

> **b.**    The Court Should Dismiss Spencer's Claim of Hostile Work Environment Because It Exceeds The Scope Of Her Administrative Charge

Spencer's hostile environment claim should also be dismissed because she has failed to exhaust her administrative remedies under Title VII.  Spencer "may raise in a district court complaint only those claims that either were included in or are 'reasonably related to' the allegations contained in her EEOC charge." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001); *see also Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 739 (2d Cir. 1998).  However, Spencer did not present her claim for hostile work environment to the EEOC prior to raising this claim in her Complaint. (*Compare* Rasin Decl. Ex. L ¶¶ 49-51 *with* Rasin Decl. Ex. M ¶¶ 48-50.) She did not allege that she suffered a hostile work environment in her EEOC Charge, nor did she identify the bases of her claim in the Charge. (*See* Rasin Decl. Ex. M ¶¶ 48-50.)  As such, Spencer's failure to exhaust her administrative remedies with respect to her hostile work environment claim warrants its dismissal. *See Butts v. N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) (holding failure to exhaust administrative remedies with respect to a claim requires dismissal of that claim); *Sinclair v. City of N.Y.*, No. 06 Civ. 0141 (WHP), 2008 U.S. Dist. LEXIS 29033 (S.D.N.Y. Apr. 9, 2008) (dismissing hostile work environment claim because plaintiff's EEOC Charge does not mention hostile work environment, and the claim is not sufficiently related to the charges of failure to promote and retaliation included in the EEOC Charge); *Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (holding plaintiff failed to preserve a hostile work environment claim where no reference was made to a hostile work environment in the Charge and generalized allegations that "women suffer blatant discrimination" and "are treated differently" were insufficient to serve as predicate for hostile work environment claim).

> **c.**    Spencer's Claim That Her Job Responsibilities Were Discriminatorily Reduced On Account Of Her Race Is Without Merit

Spencer alleges that from the outset of her supervision by Caruso, he reduced her job responsibilities by decreasing her interaction with their clients (the BusinessWeek department managers), diminishing her participation in conducting training sessions, decreasing her diversity recruitment efforts, and by giving her clerical duties.  (Spencer Tr. 72-75, 129-32.)  Spencer's claim fails, however, because she cannot establish that her duties were significantly diminished and, to the extent that any change in her duties did occur, the change did not constitute an adverse employment action sufficient to establish a *prima facie* case of race discrimination. Moreover, the claim should be dismissed because any purported change in Spencer's duties was due to her own performance deficiencies in those specific duties which she alleges were changed.

"Merely changing someone's job duties does not automatically qualify as an 'adverse employment action.'" *Morrison v. Potter*, 363 F. Supp. 2d 586, 590 (S.D.N.Y. 2005) (McMahon, J.).  In order to qualify as an adverse employment action, a change in responsibilities must be one that works a materially adverse change in the terms and conditions of employment, such as change in pay or benefits, and must be a significant diminution that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. N.Y. City Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *see also Diaz v. Weill Med. Coll.*, No. 02 Civ. 7380 (AJP), 2004 U.S. Dist. LEXIS 2054, at *64-65 (S.D.N.Y. Feb. 13, 2004) (collecting cases that hold a decrease in workload, without a demotion or decrease in pay is not an adverse employment action) *aff'd*, No. 04 Civ. 1489, 2005 U.S. App. LEXIS 13286 (2d Cir. June 24, 2005); *Castro v. New York City Bd. of Educ. Personnel Dir.*, No. 96 Civ. 6314 (MBM), 1998 U.S. Dist. LEXIS 2863, at *18-19 (S.D.N.Y. March 11, 1998) (defining a materially adverse change as one that has an attendant negative result, a deprivation of a position or an opportunity).

There is no evidence that Spencer's duties were significantly diminished at any time or that any alleged reduction in Spencer's duties caused a material adverse change in the terms or conditions of her employment. Caruso denies having significantly diminished any of Spencer's duties and Spencer has offered nothing to rebut this evidence but speculation and self-serving, vague testimony. (Spencer Tr. 72-75, 129-32; Caruso Aff. ¶¶ 4-5.) (A copy of the Affidavit of Ken Caruso is attached to the Rasin Decl. as Ex. VV). Further, at all times under Caruso's supervision, Spencer maintained the same grade level, title and benefits and she admits that she received annual salary increases for 2005 and 2006. (Spencer Tr. 78-79.) Spencer's duties therefore were not so significantly or materially diminished that she suffered an adverse employment action sufficient to establish a *prima facie* case of race discrimination.

Nevertheless, to the extent that Spencer's duties were changed, Caruso had legitimate, nondiscriminatory reasons to do so – namely Spencer's poor job performance in the areas in which she claims her duties were purportedly changed. (Caruso Aff. ¶¶ 4-5.) Contemporaneous documentation from 2003, before Caruso was Spencer's supervisor, through 2006, unequivocally demonstrates that Spencer exhibited deficiencies in her verbal communications skills and in conducting training. (Harper Tr. 47-48; Rasin Decl. Exs. W, X, and Z.) (Copies of the pages from Bill Harper's deposition transcript cited herein are attached to the Rasin Decl. as Ex. E.) The BusinessWeek department managers (Spencer's clients) complained to Caruso about these issues and Spencer's lack of organization and responsiveness. (Rasin Decl. Ex. Z.) Further, Spencer's recruitment efforts were inadequate as not a single candidate that she identified in 2005 was suitable for hire. (Rasin Decl. Exs. X and Z.) Therefore, if, in fact, Spencer's duties were reduced with respect to training, diversity recruitment, and her interaction with clients, as she claims, it was no one's fault but her own.

Moreover, Spencer has not offered even a scintilla of evidence that any alleged change in her duties had anything to do with her race.  Once a defendant has provided a legitimate, non-discriminatory reason for reducing an employee's job duties, as Defendant has done here, the burden of proof falls on Spencer to prove that Defendant's reasons were pretextual and that Caruso was motivated by discriminatory animus. *See Fisher v. Vassar College*, 114 F.3d 1332, 1339 (2d Cir. 1997).  Spencer fails her burden because the only conceivable motivation for any reduction in Spencer's duties was her deficient performance in areas that not only Caruso, but also Harper (African American) and her clients, observed were problematic.  (Rasin Decl. Exs. W, X, and Z.)

## 2. Spencer's  Allegations Of Retaliation Are Also Without Merit

Although Spencer is vague as to the bases for her retaliation claim, she appears to contend that, after she complained to Brett Marschke and Sheila O'Neill about Caruso's cursing and behavior, Caruso retaliated against her by reducing her job responsibilities and giving her a negative performance evaluation, and Marschke, O'Neill and Caruso caused her to be transferred to BIG, a transfer which she claims was a demotion.  (Rasin Decl. Ex. L ¶¶ 50-51; Spencer Tr. 72-76, 80-82.)  She further contends that, as a result of these retaliatory acts and the hostile work environment she allegedly suffered, as described above, she was constructively discharged.  (Rasin Decl. Ex. L ¶ 51; Spencer Tr. 235-36.)  Accepting Spencer's factual allegations as true, Spencer fails to establish a *prima facie* case of retaliation because none of the actions challenged by Spencer constitute materially adverse actions and there is no evidence of a causal connection between any of the actions and any protected activity.  Further, assuming Spencer could establish a *prima facie* case of retaliation, which she cannot, Defendant had legitimate, nonretaliatory reasons for all of the conduct she claims was retaliatory and the Court should dismiss her claims accordingly.

29

a.   Spencer's Performance Evaluation For 2005

No reasonable trier of fact could find that Mr. Caruso's performance evaluation of Spencer for 2005 constituted a materially adverse action that was "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 53, 126 S. Ct. 2405, 2405 (2006). As an initial matter, the 2005 evaluation was not overwhelmingly negative and Spencer concedes that she was satisfied with the overall rating of "target achievement," which was the same rating she had received from Harper for 2003 and 2004 and which she does not claim was discriminatory for those years. (Spencer Tr. 62-63, 80, 198; *see* Rasin Decl. Exs. W, X, and Z.)  Further, it is undisputed that the evaluation had no impact on Spencer's compensation, benefits, title, or grade level (Spencer Tr. 78-79), and thus, does not rise to the level of a materially adverse employment action. *See Kaplan v. Multimedia Entm't, Inc.*, No. 03 Civ. 0805C(F), 2008 U.S. Dist. LEXIS 18262, at *16-17 (W.D.N.Y. Mar. 5, 2008) (holding plaintiff's performance evaluation and performance improvement plan do not constitute materially adverse actions where they caused no cognizable harm, *i.e.*, no loss of money, prestige or professional opportunity); *Pugni v. Reader's Digest Ass'n.*, No. 05 Civ. 8026 (CM), 2007 U.S. Dist. LEXIS 26284, at *69 (S.D.N.Y. Apr. 5, 2007) (McMahon, J.) (finding plaintiff's performance evaluation was not a materially adverse action in the retaliation context because it had no impact on plaintiff's compensation or duties); *Jackson v. City Univ. of N.Y.*, No. 05 Civ. 8712 (JSR), 2006 U.S. Dist. LEXIS 43338, at *3 (S.D.N.Y. June 26, 2006) (granting post-*White* summary judgment for employer on a retaliation claim based on negative evaluations received where there is no record of negative consequences resulting therefrom).

Even assuming that Spencer's 2005 performance review rose to the level of a materially adverse action, there is no causal connection between the review and Spencer's purported

complaints of Caruso's behavior or her EEOC Charge.  As discussed, Spencer received the same overall satisfactory rating (*i.e.*, "target achievement") on her 2005 review from Caruso as she had received in the two years prior from Harper.  (Spencer Tr. 80; Rasin Decl. Exs. W, X, and Z); *see Krinsky v. Abrams*, No. 01 Civ. 5052 (SLT)(LB), 2007 U.S. Dist. LEXIS 38376, at *37 (E.D.N.Y. May 25, 2007) (finding that the fact that plaintiff continued to receive satisfactory evaluations after he allegedly complained of discrimination does not support a causal connection between the protected activity and adverse action).  Further, there is no temporal link between Spencer's complaints to Marschke and O'Neill in December 2005 or her EEOC Charge filed in December 2005 and her performance review which she received in or about February 2006.  Annual reviews are given to employees of McGraw-Hill around the same time every year, in the first few months of the year following the year reviewed.  (Marschke Tr. 116-17.)  (Copies of pages from Mr. Marschke's deposition transcript cited herein are attached to the Rasin Decl. as Ex. H.)  Moreover, any negative comments by Caruso in Spencer's 2005 annual performance review are consistent with the comments he gave her in her mid-year review in August 2005, which predated any of the alleged protected activity. (Caruso Tr. 34-35, 73; Rasin Decl. Ex. AA.)  There is absolutely no connection between Spencer's performance review and any complaint made by her about Caruso or her EEOC Charge.

Additionally, to the extent that Caruso criticized Spencer's performance in her 2005 evaluation, contemporaneous documentation demonstrates that Spencer's performance deficiencies in the areas critiqued gave him legitimate, nondiscriminatory reasons for criticizing her performance.  As discussed, Spencer's 2005 evaluation was not overwhelmingly negative or an adverse action.  The specific comments in the review which Spencer considers negative or unfair, however, reflect deficiencies in her performance that Harper's and Spencer's clients had

also observed, namely her ineffective communication, training and recruitment skills and her lack of responsiveness and organization. Indeed, Caruso had received complaints from clients throughout 2005 about Spencer's performance problems in these areas. These were consistent with complaints received previously by Harper. (Harper Tr. 47-48; Rasin Decl. Exs. W, X, and Z.) Caruso's evaluation of Spencer's performance for 2005 had nothing to do with her race and everything to do with the commonly perceived deficiencies in her performance, and Spencer provides no evidence to the contrary.

b.    The Alleged Reduction Of Spencer's Duties

As discussed in Point D(1)(c) (*supra* pp. 27-28), Spencer has offered nothing more than conclusory assertions and speculation that her duties were dramatically or materially changed after Caruso became her supervisor. To the extent that any of her duties were changed, however, the change does not constitute a materially adverse action sufficient to prove a *prima facie* case of retaliation. Spencer maintained the same grade level, title and benefits while she was supervised by Caruso and she admits that she received annual salary increases for 2005 and 2006. (Spencer Tr. 78-79.) Further, the Senior HR Manager position at BIG to which Spencer transferred was comparable to her Senior HR Manager position at BusinessWeek with the same title, grade level, pay and benefits and it had the same general human resource responsibilities. (Spencer Tr. 109; Marschke Tr. 108-110; Harper Tr. 58-59, 129-30.) Thus, while Spencer was dissatisfied with her work, her subjective feelings about any purported change in her duties does not render it an adverse employment action. *See Grennan v. Nassau County*, No. 04 Civ. 2158 (DRH)(WDW), 2007 U.S. Dist. LEXIS 23087, at *30 (E.D.N.Y. Mar. 29, 2007) (finding plaintiff's transfer was not adverse action because the transfer did not entail a dramatic change in the nature of her work and "[t]he mere fact that she viewed the surroundings in her new locale as undesirable [was] insufficient" to prove retaliation); *Reyes v. N.Y. State Office of Children &*

32

*Family Servs.*, No. 00 Civ. 7693 (SHS), 2003 U.S. Dist. LEXIS 12644, at *24 (S.D.N.Y. July 22, 2003) (holding plaintiff's dissatisfaction with change in job duties does not transform reassignment into adverse employment action), *aff'd*, 109 F. App'x 466 (2d Cir. 2004).

In addition, Spencer fails to establish either a causal or temporal connection between her complaints about Caruso or her EEOC Charge and any alleged reduction in her job responsibilities because, assuming the truth of her allegations, she claims her duties were reduced from the time Caruso joined McGraw-Hill in February 2005, before her initial complaint to Marschke, until she left McGraw-Hill. (Spencer Tr. 74-75, 129-32); *see Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (finding an inference of retaliation does not arise if adverse job actions began before the plaintiff had ever engaged in any protected activity); *Castro*, 1998 U.S. Dist. LEXIS 2863, at *26 ("It is unreasonable to infer that the continuation of behavior that had preceded the filing of the plaintiff's complaint was somehow motivated by that complaint."). Thus, there can be no inference of retaliation as to Spencer's alleged complaints about Mr. Caruso or her EEOC Charge in December 2005 because the alleged retaliation conduct occurred prior to the actual complaints.

Assuming, *arguendo*, that Spencer could establish a *prima facie* case of retaliation with respect to the alleged change in her duties, which she cannot, her claim still fails because, to the extent that her job responsibilities were changed, such changes would have been in response to her demonstrated poor performance. Spencer alleges specifically that her interaction with clients, participation in conducting training sessions and her diversity recruitment efforts were diminished as a result of her complaints about Caruso. (Spencer Tr. 72-75, 129-32.) As discussed, however, both Harper and Caruso observed that she exhibited performance deficiencies specifically in these areas and she received continued complaints from clients about

33

her performance.  (Harper Tr. 47-48; Rasin Decl. Exs. X, Z, and AA.)  Spencer's performance in these areas was a legitimate, nonretaliatory reason for any change in her duties and not a pretext for discrimination.

###### c.   Spencer's Lateral Transfer To Business Information Group ("BIG")

Spencer's transfer from the Senior Human Resources Manager position at BusinessWeek to the Senior Human Resources Manager position at BIG was purely lateral and does not constitute a materially adverse action sufficient to establish a *prima facie* case of retaliation. *Burlington N.*, 548 U.S. at *67-68, 126 S. Ct. at 2414-15.  It is an undisputed fact that Spencer's transfer did not negatively affect her compensation, grade level, title or benefits (Spencer Tr. 109), and courts in this Circuit have held that a lateral transfer that does not affect a plaintiff's compensation, benefits or job opportunities is insufficient to establish retaliation.  *See, e.g. Brenes v. City of N.Y.*, No. 01 Civ. 3943 (SJF)(LB), 2007 U.S. Dist. LEXIS 84737, at *41-42 (E.D.N.Y. Nov. 9, 2007) (holding that plaintiff-teacher's transfer to another school district where he received no loss in compensation or benefits was not retaliatory adverse action); *Reyes*, 2003 U.S. Dist. LEXIS 12644, at *24 (alleged retaliatory transfer does not constitute materially adverse action where plaintiff's title, grade, benefits and pay remained the same); *Garber v. N.Y.P.D.*, No. 95 Civ. 2516 (JFK), 1997 U.S. Dist. LEXIS 12590, at *17-18 (S.D.N.Y. Aug. 21, 1997) (holding purely lateral transfer of plaintiff, though involuntary, does not constitute materially adverse action sufficient for retaliation claim because new position had same title, job description, salary and benefits as previous position) *aff'd without op.*, 159 F.3d 1346 (2d Cir. 1998).  Because Spencer's transfer had no affect on her compensation, benefits, grade level or opportunities, it does not constitute a materially adverse action sufficient to maintain her retaliation claim.

Additionally, Spencer's *prima facie* case of retaliation must fail because no evidence has been presented suggesting that Spencer's transfer to BIG was in any way caused or motivated by knowledge of her protected activity. *See Cifra v. General Electric Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (to establish *prima facie* case of retaliation, plaintiff must establish a causal connection *i.e.*, that a retaliatory motive played a part in the adverse action). In fact, Caruso (the alleged discriminator and the reason why Spencer has brought this lawsuit (Spencer Tr. 61)) played no role whatsoever in the decision to allow Spencer to transfer. (Caruso Tr. 78-79.) Rather, the decision was made by a combination of input from Marschke, O'Neill and Harper. (O'Neill Tr. 206-208; Harper Tr. 52-54.) Spencer adduces no evidence of retaliatory motive on the part of any of these individuals. O'Neill did not understand Spencer's complaint regarding Caruso's cursing and behavior to be a complaint of discrimination.

Assuming that Spencer could prove her *prima facie* case of retaliation with respect to the transfer, which she cannot, Defendant had legitimate, nonretaliatory reasons for the transfer which Spencer cannot prove are pretextual. It is undisputed that Spencer refused to mediate or resolve the problems she was having with Caruso and instead, she made a request to O'Neill for a transfer. (O'Neill Tr. 206-7; Spencer Tr. 91-92.) Acting on Spencer's request, O'Neill and Marschke looked into available, comparable positions and, after speaking with Harper, determined that the business needs of BIG rendered the Senior Human Resources Manager position in that group the best option. (O'Neill Tr. 206-7; Marshcke 108-110; Harper Tr. 53-56.) Spencer was pleased with the suggestion of the position initially and there was no reason to believe that she would not be, given that it had the same grade level, pay, benefits and title as her current position. (*Id.*) By the time Spencer expressed reluctance about leaving BusinessWeek, she had made it abundantly clear that she no longer would work for Caruso, thereby necessitating

that the transfer proceed as originally requested. (O'Neill Tr. 206-8.)  As such, McGraw-Hill had legitimate, nonretaliatory reasons for Spencer's transfer that had nothing to do with her race.

        d.      <u>Contrary To Spencer's Claims That She Was Constructively Discharged,<br>She Voluntarily Resigned From Her Employment With McGraw-Hill</u>

Spencer cannot raise a triable issue of fact with respect to her constructive discharge claim for two reasons.  First, Spencer has not alleged the type of severe working conditions that would support a claim of constructive discharge.  *Spence*, 995 F.2d at 156.  Numerous courts have held that a constructive discharge claim cannot be established simply through evidence that an employee is dissatisfied with alterations in her job and responsibilities or with her performance evaluations where the plaintiff did not suffer loss of pay, title or benefits. *See, e.g.*, *Petrosino*, 385 F. 3d at 231-231 (finding plaintiff's complaint of reduction in duties pending transfer would not support constructive discharge claim because there was no evidence employer wished her to resign or that conduct at issue caused loss of pay or change in title); *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360-61 (2d Cir. 1993) (finding that, although plaintiff was dissatisfied with assignments, criticisms of his work, his compensation and alleged demotion, he was not forced to resign because his rank or salary were never reduced and he received bonuses every year); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 251 (S.D.N.Y. 2001) (holding denials of promotions and raises, criticism of plaintiff's work performance and "alterations in, or an employee's dissatisfaction with, [her] responsibilities or assignments do not give rise to an inference of constructive discharge") *quoting Ternullo v. Reno*, 8 F. Supp. 2d 186, 193 (N.D.N.Y. 1998); *Phillips v. Gen. Dynamics Corp.*, 811 F. Supp. 788, 792 (N.D.N.Y. 1993) (holding receiving lower pay than male counterparts, additional work assignments and disparate treatment concerning job responsibilities not sufficient for constructive discharge).  It is undisputed that Spencer did not suffer a loss of pay or benefits or a change of title or grade level

as a result of her performance evaluation for 2005 or transfer to BIG. (Spencer Tr. 109.)  Spencer simply did not suffer working conditions so intolerable that a reasonable person in her position would have been forced to resign.

Second, the undisputed facts demonstrate that McGraw-Hill did not create intolerable working conditions deliberately or intentionally to force Spencer to resign. *See Petrosino*, 385 F.3d at 229-230.  No one at McGraw-Hill ever told Spencer that she should leave the company. (Spencer Tr. 235); *see Stetson*, 995 F.2d at 361 (finding that, among other reasons, plaintiff was not constructively discharged where his supervisor never mentioned retirement or suggested that plaintiff's employment would be terminated).  In fact, when Spencer told O'Neill that she had decided to resign, O'Neill asked her to reconsider and offered to help her resolve her dissatisfaction with her job duties, but Spencer declined O'Neill's offer.  (Spencer Tr. 237-38; O'Neill Tr. 238.)  Spencer can offer no evidence that Defendant wished her to resign or that her working conditions were intentionally made miserable because of her race.  Rather, it is undisputed that Spencer left McGraw-Hill to fulfill her dream of owning her own business, d/b/a Spencer Healthy Life.  (Spencer Tr. 243-44.)  Spencer entertained this dream her entire life and began pursuing it by registering her business, notably, almost a year before she resigned and before she transferred to BIG.  (Rasin Decl. Ex. CC.)

Because Spencer has failed to raise a triable issue of fact as to whether Defendant deliberately created intolerable working conditions to cause Spencer's resignation, the Court should dismiss her constructive discharge claim.

**E.      PLAINTIFF BRENDA CURTIS**

**1.      Curtis's Claims Of Racial Discrimination And Retaliation Arising Prior To September 14, 2005 Are Barred By The General Release She Knowingly And Voluntarily Signed**

On September 14, 2005, in exchange for valid consideration, Curtis signed a Termination and Release Agreement ("Release").  (Rasin Decl. Ex. EE.)  In the Release, Curtis agreed to waive all claims she may have against McGraw-Hill, including claims under Title VII, § 1981, the NYSHRL and the NYCHRL.  (*Id.*)  Despite signing the Release, Curtis alleges causes of action for race discrimination and retaliation under those statutes based upon her employment with and discharge from McGraw-Hill (Rasin Decl. Ex. L ¶ 53), and one of the positions she applied for, the Administrative Assistant/Office Manager to Vice President in Global Licensing and Contracts, on July 27, 2005, which was awarded to another individual on August 30, 2005, prior to Curtis signing the Release.  (Rasin Decl. Ex. L ¶ 54; Rasin Decl. Exs. HH and II.)  Notably, an African American woman with a higher educational degree and more corporate and government rating experience who was already working in Global Licensing and Contracts as an Administrative Assistant/Contract Coordinator was hired.  (*Id.*)  Nevertheless, the undisputed facts are that Curtis knowingly and voluntarily waived all claims against McGraw-Hill arising prior to September 14, 2005, including all claims arising out of her employment with and discharge from McGraw-Hill, as well as the denial of her application for the Global Licensing and Contracting position awarded in August 2005.  As such, her discrimination and retaliation claims under Title VII, § 1981, the NYSHRL and the NYCHRL based upon events prior to her discharge should be dismissed.

It is well established that an employee may waive a statutory claim for discrimination so long as she makes the waiver knowingly and voluntarily.  *See Fletcher v. Palazzo*, 151 F. App'x 73, 75 (2d Cir. 2005) (After considering the "essential question [of] 'whether in the totality of the circumstances, the individual's waiver of his right can be characterized as knowing and voluntary,'" affirming dismissal of claims of race discrimination as barred by release); *Nicholas*

*v. NYNEX, Inc.,* 929 F. Supp. 727, 729-33 (S.D.N.Y. 1996) (dismissing Title VII and NYSHRL claims because plaintiff knowingly and voluntarily entered into a clear and unambiguous written release knowingly and voluntarily); *Branker v. Pfizer, Inc.*, 981 F. Supp. 862, 866-67 (S.D.N.Y. 1997) (dismissing NYSHRL and NYCHRL claims because plaintiff knowingly and voluntarily entered into a written release).

Here, Curtis has admitted that she read, understood and signed the written Release, which clearly and plainly waives all claims against McGraw-Hill arising out of Curtis's employment and termination, before she signed it and agreed to its terms. (Curtis Tr. 131-33.) Curtis also admits that she was told by McGraw-Hill to consult with an attorney regarding the Release. (Curtis Tr. 132-33.) There can be no doubt that Curtis knew she was waiving all claims against McGraw-Hill and the import of that waiver when she signed the Release.

Courts dismiss claims of discrimination on summary judgment on facts similar to the ones in this case. *See, e.g., Tung v. Texaco, Inc.*, 150 F.3d 206, 208 (2d Cir. 1998) (affirming dismissal of Title VII action on the grounds that plaintiff's waiver was knowingly and voluntary); *Dewey v. PTT Telecom Neth., U.S., Inc.*, No. 94 Civ. 7838, 1996 U.S. App. LEXIS 15840, at *8 (2d Cir. July 2, 1996) (affirming dismissal of employment discrimination claims as barred by release); *Bradley v. TIAA-CREF*, No. 04 Civ. 2434 (RCC)(KNF), 2005 U.S. Dist. LEXIS 24455, at *4-7 (S.D.N.Y. Oct. 20, 2005) (dismissing Title VII action because plaintiff's waiver was knowing and voluntary). Based on these facts, the Court should find that Curtis knowingly and voluntarily waived all claims arising out of her employment and termination with McGraw-Hill, enforce the Release and dismiss Curtis's claims of race discrimination and retaliation under Title VII, § 1981, the NYSHRL and the NYCHRL arising prior to September 14, 2005.

2.    **Curtis's Claims Of Discriminatory Failure To Hire And Disparate Treatment Fail As A Matter Of Law**

Curtis contends the positions for which she applied after her discharge were discriminatorily given to pre-selected Caucasian candidates (Rasin Decl. Ex. L ¶ 54). Curtis fails, however, to carry her burden of proving that intentional discrimination played a part in the selection process for any of these positions.

    a.    <u>Curtis Cannot Make Out A *Prima Facie* Case Of Discrimination</u>

As with Henson, Curtis cannot establish a *prima facie* case of discrimination due to a failure to hire her.

    (i)    <u>*Curtis Fails to Provide Sufficient Evidence of a Vacancy for One Position*</u>

Curtis cannot establish a *prima facie* case of discriminatory failure to hire for the position of Office Manager in Vista Research Inc. ("Vista"). Specifically, Curtis has failed to provide sufficient evidence that an opening ever existed for this position. The ultimate burden of persuasion lies with Curtis at all times to set forth her *prima facie* case and demonstrate that discriminatory motive played a part in the decision not to hire her. *Burdine*, 450 U.S. at 253. Since Vista was acquired by McGraw-Hill in April 2005, there has been no opening for an Office Manager position and thus neither Curtis nor anyone else was interviewed or hired for such a position. (Maffei Aff. ¶ 3.) (A copy of the Affidavit of Anne Maffei is attached to the Rasin Decl. as Ex. WW).

The second element of a *prima facie* case of discrimination for failure to hire – that plaintiff applied for and was qualified for a job - cannot be established merely with speculation that a vacancy existed. *Petrosino*, 385 F.3d at 228 (dismissing plaintiff's claims where plaintiff could not adduce evidence of any vacant positions within the limitations period); *Gallo v. Second Taxing Dist.*, 507 F. Supp. 2d 164, 178 (D. Conn. 2007) (holding that plaintiff could not make

out *prima facie* failure to hire claim because he failed to offer evidence that he applied for any open positions within the company).

As such, Curtis cannot establish a *prima facie* case where she has produced no record of a vacant Office Manager position in Vista.  Thus, her discrimination claim regarding this position must be dismissed.

(ii)      <u>*Curtis Lacked the Requisite Qualifications or Was Less Qualified Than the Hiree for Six Positions*</u>

Curtis also cannot establish the second prong of a *prima facie* case of discrimination as to four positions because she lacked the requisite qualifications for those positions, and/or had inferior qualifications to the individuals selected.

Specifically, Curtis did not have the required educational background and experience for three of the positions at issue.  On August 5, 2005, Curtis Applied for an Assistant Compliance Officer position.  The position required a four year degree.  (Rasin Decl. Ex. JJ; Bolger Aff. ¶ 3). (A copy of the Affidavit of Rita M. Bolger is attached to the Rasin Decl. as Ex. XX).  Unlike the selected candidate, Curtis had only obtained her GED, and had never worked as a compliance officer.  (Curtis Tr. 43-45, 159.)  The hiring manager offered the position to the most qualified candidate, <u>an African American</u> woman with a Bachelor's Degree in Business Administration and six years of compliance experience.  (Rasin Decl. Ex. KK; Bolger Aff. ¶¶ 4, 5).

Curtis also applied to be the Administrative Assistant for the Chief Information Officer of Technology for S&P.  (Rasin Decl. Ex. LL.)  Initially, the hiring manager selected <u>an African American</u> woman he felt held the skill set required for the position, having previously served as an Administrative Assistant in Data Operations for McGraw-Hill.  (Held Aff. ¶ 5).  (A copy of the Affidavit of Joseph Held is attached to the Rasin Decl. as Ex. YY).  When that candidate chose to remain with her current manager and turned down the position, the hiring manager

chose to hire <u>another African American</u> woman who held the requisite experience, having previously served as Executive Assistant/IS Project Coordinator to the Chief Information Office of Par Pharmaceuticals, Inc., where she was responsible for vendor/contract relations for hardware and software maintenance as well as wireless communication services.  (Held Aff. ¶ 6.)  Further, the successful candidate held a Bachelor's Degree and had worked previously as a Research Assistant for an S&P customer, Goldman Sachs Group.  (Held Aff. ¶ 6.)  Unlike the selected candidate, Curtis did not hold a bachelor's degree.  (Curtis Tr. 43-45.)

Curtis also alleges she applied for a Graphic Design Position in Marketing.  (Curtis Tr. 148; Rasin Decl. Ex. NN.)  The responsibilities of this position included creating advertising and digital marketing materials and reviewing design work to ensure brand compliance and consistency.  (Cederholm Aff. ¶ 4; Rasin Decl. Ex. OO.)  (A copy of the Affidavit of Carl Cederholm is attached to the Rasin Decl. as Ex. ZZ).  A bachelor's degree and four to eight years of graphic design experience were required.  (Rasin Decl. Ex. CC.)  Curtis, having never worked as a graphic designer, again had neither the requisite degree nor experience required for this position.  (Curtis Tr. 44-45, 148.)  By contrast, the successful candidate (Caucasian) had a bachelor's degree and over five years of experience in graphic design.  (Cederholm Aff. ¶ 6.)  In addition, the hiree was already doing graphic design for S&P as an outside contractor when Curtis applied.  (*Id.*)

Likewise, Curtis was less qualified than the candidates who were hired for three of the other positions for which she applied, all of which were filled by minority candidates.  Curtis applied for an Administrative Assistant/Office Manager position in Global Licensing and Contracts.  (Rasin Decl. Ex. HH.)  <u>An African American</u> woman who worked at S&P since 1993 and was already working in Global Licensing and Contracts as a temporary Administrative

Assistant/Contract Coordinator applied for and was awarded this position.  (Rasin Decl. Ex. II; Inglesh Aff. ¶ 4.)  (A copy of the Affidavit of Evonne Inglesh is attached to the Rasin Decl. as Ex. AAA).

Curtis also applied for an Administrative Assistant position in Corporate & Government Ratings at S&P's Financial Services Ratings.  (Rasin Decl. Ex. PP.)  An Hispanic woman with a Bachelor's Degree and over nine years of experience working in S&P's Financial Services Ratings area was hired for the position.  (Coughlin Aff. ¶¶ 3, 4; Rasin Decl. Ex. QQ.)  (A copy of the Affidavit of Paul Coughlin is attached to the Rasin Decl. as Ex. BBB).  Further, the candidate who was hired had previously served as Administrative Assistant to one of the hiring manager's direct reports in the Corporate and Government Ratings Group.  (Coughlin Aff. ¶ 5.)

Finally, Curtis applied for an Administrative Assistant position in S&P Ratings.  (Rasin Decl. Ex. RR.)  An Hispanic woman who came highly recommended by the hiring manager's colleagues, and had eight years of prior experience working with BusinessWeek,  filled the position.  (Stein Aff. ¶ 5; Rasin Decl. Ex. SS.)  (A copy of the Affidavit of Shari Stein is attached to the Rasin Decl. as Ex. CCC).

Thus, Curtis either lacked the requisite requirements for the positions for which she applied or her qualifications were inferior to those of the individuals selected, and she cannot establish a *prima facie* case of discrimination on those grounds.

> (iii)    *For One Position, Curtis Has Failed to Allege Facts Sufficient to Give Rise to an Inference of Discrimination*

Curtis applied for an Administrative Assistant position serving Structured Finance and reporting to Paul Kelly, the Managing Director of Ratings for Structured Finance.  (Curtis Tr. 135-36.)  The Office Manager for the group, acting as a proxy for Kelly, was to screen the

applicants and determine which of them would move on to a second round of interviews with him.  (Farrelly Aff. ¶ 3.)   (A copy of the Affidavit of Nancy (Tomeo) Farrelly is attached to the Rasin Decl. as Ex. DDD).  After receiving Curtis's resume through her sister, who worked in Structured Finance at the time of Curtis's application, the Office Manager added Curtis to the list of potential candidates for the position.  (Farrelly Aff. ¶ 4.)  After interviewing Curtis, however, the Office Manager did not select her to move on to the second round of interviews, but selected three other applicants, including <u>an African American</u> woman, to move on to the next round of interviews.    (Farrelly Aff. ¶ 5.)  Thus, there can be no inference of race discrimination.  *See Almornord v. Kingsbrook Jewish Medical Ctr.*, No. 04 Civ. 4071 (NGC)(RMC), 2007 U.S. Dist. LEXIS 58529, at *27-28 (E.D.N.Y. Aug. 10, 2007) (finding no inference of racial bias where the plaintiff's replacement was a member of the same protected class as Plaintiff) (citations omitted).

(iv)     *For One Position, Hiring Was "Cancelled"*

Curtis also applied to be the Administrative Assistant to the Senior Vice President of Global Client Services & Sales.  (Rasin Decl. Ex. TT.)  Hiring for this position was cancelled due to the fact that the Vice President traveled frequently and found he did not need a full-time Administrative Assistant, particularly in light of the assistance he received from both the Administrative Assistant to his direct report and the Administrative Assistant to the President for Global Client Services & Sales when necessary.  (George Aff. ¶ 5.)  (A copy of the Affidavit of Susan George is attached to the Rasin Decl. as Ex. EEE).  As a result, neither Curtis nor anyone else was interviewed or hired for the position.  (George Aff. ¶ 6.) Because there was no job to fill, Curtis cannot establish her *prima facie* case of discrimination.

(v)     *Curtis Has Failed to Allege Facts Giving Rise to an Inference of Discrimination Regarding Any of Her Applications*

44

Even if Curtis applied and was qualified for the positions at issue, she cannot establish that she was not selected for those positions under circumstances giving rise to an inference of discrimination, the fourth prong of a discrimination claim.  Curtis claims that each of these positions she applied for was given to a pre-selected Caucasian.  (Rasin Decl. Ex. L ¶ 54.) However, she admitted at her deposition that she did not know who was awarded the positions at issue and merely suspected they were Caucasian.  (Curtis Tr. 149-154.)  To the contrary, of the seven positions for which Curtis claims she applied which were filled (one was cancelled and not filled at all, and one was never vacant), three went to African American candidates and two were filled by Hispanic candidates.  Of the two positions that ultimately went to Caucasian candidates, one (Graphic Design) Curtis concedes she had neither the educational background or experience necessary for the position.  (Curtis Tr. 44-45, 148.)  For the other position which ultimately was filled by a Caucasian (Administrative Assistant for Structured Finance), a two-tiered interview process was utilized.  An African American woman was selected at the stage where Curtis was eliminated from further consideration (Farrelly Aff. ¶ 5), negating any claim Curtis was not moved forward due to her race.  As such, Curtis's allegations of preferential treatment to Caucasian candidates are simply not supported by the record.  Further, as discussed, Curtis lacked the educational and experience qualifications for several of the jobs for which she applied, belying any inference she was not selected due to her race.  *See R.H. Donnelly*, 368 F. 3d at 126, *citing McDonnell-Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824.

In short, Curtis cannot establish a *prima facie* case of discrimination as to the positions for which she applied, and, accordingly, her discriminatory failure to hire claims fail as a matter of law.

          b.      <u>Defendant Had Legitimate, Non-Discriminatory Reasons For Its Hiring Decisions</u>

Even if Curtis could establish a *prima facie* case of discrimination as to the positions for which she applied, Defendant has articulated legitimate, non-discriminatory reasons for its hiring decisions.  Specifically, for the seven positions to which Plaintiff applied where the position was vacant and filled, McGraw-Hill hired the candidate most qualified for the job based upon her qualifications for and experience relevant to the job in question.  As discussed, Curtis has no record of applying for certain positions, lacked the requisite qualifications for others, and was not as strong a candidate as the individual selected for the remaining positions. Thus, Defendant has satisfied its burden of articulating legitimate, non-discriminatory reasons for not re-hiring Curtis. *Reeves*, 530 U.S. at 140, 120 S. ct. at 2104-05.

          c.      <u>Curtis Has No Evidence of Pretext</u>

Finally, Curtis cannot establish that Defendant's reasons for not hiring her are a pretext for race discrimination.  *Hicks*, 509 U.S. at 526.  To the contrary, the individuals selected for the positions at issue demonstrate that race played no role in the hiring decisions, with three positions going to African Americans, two to Hispanics and, for one position, an African American passing the screening level at which Curtis was rejected.  Contrary to Curtis's contentions, there is no pattern of selecting Caucasian candidates nor any indication race played any role.  As such, Curtis's claims of discriminatory hiring practices must fail.

**3.**      <u>**Curtis's Allegations Of Retaliation Are Also Without Merit**</u>

In the Complaint, Curtis contends that, in retaliation for her complaint to Gattinella and her alleged complaints of discriminatory treatment to Stadnyk, Hunsucker, Whelan and Menon, she was not selected for the positions for which she applied after her discharge (Curtis Tr. 133-37), and Stadnyk failed to provide her with a proper letter of recommendation (Curtis Tr. 133-34).  Curtis's claims of retaliation also fail as a matter of law.

As to the positions for which she applied, Curtis cannot set forth a *prima facie* case of retaliation because she has no evidence supporting a causal connection between her purported complaints and the decisions not to hire her.  Moreover, Defendant has articulated legitimate, non-retaliatory reasons for its hiring decisions and there is no evidence of pretext.

Curtis also cannot establish a *prima facie* case of retaliation concerning the letter of recommendation, as it does not constitute an adverse employment action.

a. <u>Curtis Cannot Establish a Retaliation Claim As To Any Adverse Hiring Decision</u>

(i) *<u>The Hiring Managers Were Unaware That Curtis Complained</u>*

Curtis has produced no evidence that any of the hiring managers responsible for the positions she sought had knowledge of her purported complaints.  Curtis made no complaint of discrimination to any of the hiring managers.   In fact,  Curtis does not even allege that the hiring managers for the positions for which she applied, either formally or informally, knew that she complained about disparate treatment.  As an initial matter, Stadnyk testified Curtis never made any complaints of discrimination to him (Stadnyk Tr. 26) and therefore could not have conveyed such a complaint to any hiring manager.  (Copies of the pages from Mr. Stadnyk's deposition transcript cited herein are attached to the Rasin Decl. as Ex. J.)

Further, while it is Defendant's position Curtis only complained to Gattinella, neither Gattinella, Stadnyk, Whelan, Menon, nor Hunsucker (the individuals to whom she claims she complained) ever shared any alleged complaints by Curtis with any of the hiring managers at issue, as those hiring managers had no knowledge of Curtis's purported complaints.  (Inglesh Aff. ¶ 6; Coughlin Aff. ¶ 7; Bolger Aff. ¶ 6, George Aff. ¶ 7; Held Aff. ¶ 7; Stein Aff. ¶ 6; Cederholm Aff. ¶ 7; Farrelly Aff. ¶ 6; Maffei ¶ 4.)  Curtis can provide no evidence to the

contrary.   Therefore, Curtis cannot demonstrate a causal connection between her alleged complaints and the hiring decisions.

(ii)   <em><u>Defendant Had Legitimate, Non-Retaliatory Reasons For Its Hiring Decisions Which Are Not Pretextual</u></em>

As discussed in Section E(2)(a)(ii), *supra*, Defendant made its hiring decisions based upon Curtis's qualifications and experience as compared to those who were selected for the relevant positions.   Curtis has no evidence such reasons are pretextual and cannot draw any link between her alleged complaints of discrimination and the wholly independent hiring decisions relating to her applications.   *Hicks*, 509 U.S. at 526, 113 S. Ct. at 2757.   As such, Curtis's retaliation claims based upon her applications for positions within McGraw-Hill must fail.

b.   <u>Curtis Fails to Establish that the Letter of Recommendation She Received from Stadnyk Constituted an Adverse Employment Action Sufficient to Constitute Retaliation</u>

Curtis also claims that, in response to her complaints of racial discrimination, Stadnyk issued a recommendation that was not "properly written." (Curtis Tr. 111.)   In particular, she alleges that Stadnyk "demeaned" her title by referring to her as an Administrative Assistant, rather than an Office Manager, and he failed to mention that she trained certain employees on Excel and PowerPoint.   (Curtis Tr. 99, 112.)   Upon review of the letters of recommendation prepared by Stadnyk, Curtis's allegations fail to establish that the letter constituted an adverse employment action as is required by the second prong of the test to establish a *prima facie* retaliation case.

To establish that an employer's conduct is retaliatory, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," which in the retaliation context, "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington,* 548 U.S. at 60, 126 S. Ct. at 2415 (2006)

(internal quotations omitted).   In other words, the challenged action must be such that a reasonable employee would not complain of discrimination if they believed the challenged action would be taken against them as a result of the complaint.   The employer's conduct must, however, result in more than a trivial annoyance to plaintiff.   *Id.*

As an initial matter, no reasonable trier of fact could find that the initial recommendation letter was negative nor that it disadvantaged Curtis in such a way that she might not have complained if she had known her complaint would result in Stadnyk using the language he did. The first draft of the letter states that Curtis's position was eliminated due to a reorganization, that she "shared her expertise with computer applications with other support staff" and developed "efficiencies for the business unit," and explicitly recognizes that Curtis "consistently performed at a professional level" of the staff.   (Rasin Decl. Ex. FF.)   Such positive comments cannot be deemed "adverse," and no reasonable employee would consider them unacceptable. Further, the letter was modified *at Curtis's request* to reflect Curtis's suggested revisions. (Curtis Tr. 111-112.) (Rasin Decl. Ex. GG).     Her claim now that she deserved an even more detailed letter is insufficient to establish that the positive letter of recommendation constituted an adverse action by McGraw-Hill.  *Richardson v. NY State Dep't of Corr. Serv.*, 180 F.3d 426, 443 (2d Cir. 1999) (holding that plaintiff's conclusory allegation she deserved excellent, rather than average, performance rating was insufficient as a matter of law to establish an adverse or disadvantageous action constituting retaliation).   Thus, she cannot make out a *prima facie* case of retaliation based on the letter of recommendation.

## <u>CONCLUSION</u>

For all the reasons set forth above, Defendant requests that its motion for summary judgment be granted and Plaintiffs' Complaint be dismissed in its entirety, with prejudice.

Respectfully submitted,

PROSKAUER ROSE LLP

Dated: New York, New York       By:       /s/ Gregory I. Rasin
       June 27, 2008                          Gregory I. Rasin
                                        Elise M. Bloom
                                        Steven D. Hurd
                                        1585 Broadway
                                          New York, New York 10036-8299
                                        Telephone: 212.969.3000
                                        Fax: 212.969.2900
                                        Email: grasin@proskauer.com
                                        Attorneys for Defendant