EXHIBIT EE TO THE JUNE 26, 2008
DECLARATION OF GREGORY I. RASIN, ESQ.

# STANDARD &POOR'S

Joyce Hunsucker
Director
Human Resources

55 Water Street · 37th Floor
New York, NY 10041-0003
212 438 6025 Tel
212 438 6753 Fax
joyce_hunsucker@sandp.com

August 25, 2005

Brenda Curtis
1020 Elton St. Apt. B
Brooklyn, NY 11208

Re: Termination and Release Agreement (this "Agreement")

Dear Brenda:

This letter, when signed by you and returned to us in a timely manner, and provided you do not revoke it as provided below, will constitute an Agreement between you and The McGraw-Hill Companies, Inc., including its subsidiaries, divisions and affiliates ("McGraw-Hill"), concerning termination of your employment, as follows:

1. Your current salary shall continue up to and including October 3, 2005 and your employment with McGraw-Hill will terminate on that date (your "Employment Termination Date"). It is understood that your employment will terminate on your Employment Termination Date regardless of whether or not you enter into this Agreement, it being understood that this Agreement is offered to you to provide you with the opportunity to receive the Special Consideration stated in Section 3(b) below. You have been relieved of your responsibilities and are not required to report to work.

2. Due to the termination of your employment, you will receive payment of the gross amounts set forth below, less deductions required by law or authorized by you. These amounts will become due to you in accordance with Company policy and applicable law based upon termination of your employment (other than for cause) on your Employment Termination Date.

   (a) A separation pay benefit in an amount equal to 3 4/12 weeks of pay, approximately $4,690, less deductions required by law or authorized by you. This separation pay benefit will be made in a lump sum on or about your Employment Termination Date unless this Agreement becomes effective and you elect the Semi-monthly Payment Option provided below.

   (b) A payment, less deductions required by law or authorized by you, representing any unused earned vacation to which you are entitled as of your Employment Termination Date.

   (c) Your vested retirement benefits in the McGraw-Hill pension and 401(k) savings plans, if any, will be paid to your after your Employment Termination Date, subject to and in accordance with the provisions of those plans. If you elect to receive your separation pay in installments under the Semi-monthly Payment Option, you cannot receive a distribution of McGraw-Hill 401(k) Savings Plan account balance, if any, until after the end of your separation pay period.

DATA ENTRY
OCT 0 7 2005

www.standardandpoors.com

D00006

3.  (a)  Subject to the terms and conditions of this Agreement, and due and payable only after the Effective Date of this Agreement, you will receive the following "Special Consideration" in return for: (i) timely signing and returning this Agreement, as provided in Section 4 below, (ii) your not revoking it during the Revocation Period as provided in Section 5 below, and (iii) the waiver, discharge and general release of all claims as provided in Section 10 of this Agreement.

(b)  The Special Consideration shall consist of:
   (i)  An additional separation pay benefit, representing an amount equal to an additional 3 4/12 weeks pay in the gross amount of $4,690 less any deductions required by law or authorized by you.
   (ii)  Outplacement services provided through the firm of Lee Hecht Harrison.

(c)  The Special Consideration provided in Section 3 (b) above will be payable within 15 days after the later of (i) the Effective Date of this Agreement or (ii) your Employment Termination Date, unless you elect the Semi-Monthly Payment Option provided below.

4.  You are hereby given twenty-one (21) days from the date of this Agreement, that is, until September 15, 2005 within which to consider this Agreement and to decide whether to sign and return this Agreement, which includes the waiver, discharge and release of all claims as set forth in Section 10 hereof. This means you must sign and return this Agreement by September 15, 2005. If you do not sign and return this Agreement by that date, it will automatically be deemed null and void and without obligation on the part of either the Company or you. Any modifications made to this Agreement do not restart, extend or affect in any manner this twenty-one (21) day consideration period. You may decide to sign and return this Agreement in less time.

5.  If you sign and return this Agreement within the twenty-one (21) day period provided above, you will have the right to revoke it at any time after you have signed and delivered this Agreement in a timely manner until the later of (a) your Employment Termination Date or (b) the date that is seven (7) days immediately after you execute this Agreement (the "Revocation Period"). Any revocation must be in writing and addressed and actually delivered or post marked within the Revocation Period to:

> Joyce Hunsucker
> Director, Human Resources
> 55 Water Street/ 37th Floor
> New York, NY 10041

Your notice of revocation, to be effective, must state that you are revoking your acceptance of this Agreement. If you revoke this Agreement during the Revocation Period, it will be deemed null and void and without obligation on the part of either McGraw-Hill or you.

6.  You are hereby advised to consult with an attorney prior to executing this Agreement, which includes the waiver, discharge and general release of all claims set forth in Section 10 below.

DATA ENTRY
OCT 6 7 2005

B. Curtis Agreement
Aug.-25, 2005
Page 2 of 7

D00007

7.  If you timely sign and return this Agreement and do not revoke it during the Revocation Period, it will become effective on the date immediately following the end of the Revocation Period (the "Effective Date" of this Agreement). This Agreement shall not become effective or enforceable and McGraw-Hill shall have no obligation to make any payment under this Agreement until the Effective Date.

8.  (a) Providing this Agreement becomes effective, you will have the option of receiving your total unpaid separation pay benefit provided under Sections 2(a) and 3(b)(i) above, in a lump sum, less deductions required by law or authorized by you, within 15 days after the later of the Effective Date of this Agreement or your Employment Termination Date, or to accept your total unpaid separation pay benefit in the form of separation pay benefit checks payable in accordance with the Company's regularly scheduled semi-monthly payroll cycle (even if you are on any other payment cycle), constituting payment for the total number of weeks on which your total unpaid separation pay benefit is based (the "Separation Pay Period"). If you are paid a salary for the period after your Employment Termination Date, it shall be deemed a pre-payment of any amounts due to you or that thereafter become due to you under this Agreement and, accordingly, shall be deducted by McGraw-Hill from any such amounts otherwise due to you.

(b) If you elect the option to accept the semi-monthly separation pay benefit option described in Section 8(a) above (the "Semi-Monthly Payment Option"), you may elect to continue your existing participation in your group medical, dental and life insurance plans, including any supplementary life insurance, during the Separation Pay Period. Such continued participation will be provided at the "active employee rates" which will automatically be deducted from your separation pay benefit checks. Your coverage under these plans will cease at the end of the month in which the last semi-monthly payment check is paid to you.

(c) Please indicate in the space provided on Attachment 1 to this Agreement whether you elect the lump sum option or the semi-monthly payment option and whether you elect to continue insurance coverages during any Separation Pay Period. If this Agreement becomes effective but you do not indicate your election by signing and returning Attachment 1 to this Agreement by the Effective Date, you will be paid under the lump sum option and your insurance coverages shall not be continued.

9.  All payments under this Agreement are subject to all deductions required by law or authorized by you.

10. In return for the consideration furnished to you by McGraw-Hill, as set forth in Section 3 (b) of this Letter of Agreement, you hereby discharge and generally release McGraw-Hill and its subsidiary corporations, divisions, affiliates, successors and assigns, and their current and former directors, officers and employees, both individually and in their corporate capacities (hereafter collectively known as "McGraw-Hill") from all claims, causes of action, suits, agreements, and damages which you may have now or in the future against McGraw-Hill relating to your employment or the termination thereof or arising out of any other act, failure to act or event occurring on or before the Effective Date, including but not limited to, any claims or causes of action you ever had, now have or could have under, without limitation, the Age Discrimination in Employment Act of 1967, as amended, Title VII of the Civil Rights Act of 1964, as amended, Sections 1981 through 1988 of Title 42 of the United States Code, as

B. Curtis Agreement
Aug. 25, 2005
Page 3 of 7

amended, the Immigration Reform and Control Act, as amended, the Americans with Disabilities Act of 1990, as amended, the Worker Adjustment and Retraining Notification Act, as amended, New York State Human Rights Law, New York Human Rights Law New York Rights of Persons With Disabilities, New York Confidentiality of Records of Genetic Tests, New York Whistleblower, New York Statutory Provision Regarding Retaliation/Discrimination for Filing a Workers' Compensation Claim, New York Adoptive Parents' Child Care Leave Law, New York Smokers' Rights Law, New York Equal Pay Law, New York AIDS Testing Confidentiality, New York Nondiscrimination Against Genetic Disorders Law, New York Bone Marrow Leave Law, New York Equal Rights, New York Confidentiality of Records of Genetic Tests, The New York State Labor Relations Act, regulations of the New York State Division of Human Rights, The New York Labor Law, The New York Wage Hour and Wage Payment Laws, The New York Minimum Wage Law, as amended, The New York City Administrative Code, New York State Public Employee Safety and Health Act public policy, contract, tort or common law (including any claim of breach of covenants of good faith and fair dealing), all other federal, state and local laws, regulations or ordinances regarding civil, human rights, employment, age, retirement, or discrimination and any claim for costs, fees, or other expenses, including attorney's fees, in connection with any of these matters. By executing this Agreement, you hereby agree that you will not initiate or maintain any proceeding in any judicial forum, or under McGraw-Hill's Fast and Impartial Resolution Program (FAIR), relating to any matters covered by this Agreement. This release, however, shall not apply to the performance of McGraw-Hill's express obligation to you under this Agreement. Both you and McGraw-Hill may institute an action to specifically enforce any term of this Agreement.

11. By signing this Agreement, you represent and affirm that you have not filed, caused to be filed and are not presently a party to any claim, complaint, action or proceeding against McGraw-Hill (as defined in Section 10) in any forum. You further represent and affirm that you have been paid and/or have received all compensation, wages, bonuses, commissions, and/or benefits to which you may be entitled as of the Effective Date for all hours worked and that no other compensation, wages, bonuses, commissions and/or benefits are due to you as of the Effective Date, except as provided for in this Agreement. You also represent and affirm that you have no known workplace injuries and have been provided and/or have not been denied any leave requested under the U.S. Family and Medical Leave Act or any similar or related state or city laws.

12. You hereby agree that the terms of this Agreement, including the provisions of this Agreement concerning payment to you of any monies or concerning the provision to you of any other benefits, shall be kept strictly confidential by you and shall not be disclosed to any third party, including any other employee of McGraw-Hill (other than a member of the Legal Department or of the Human Resources Department), except that you may disclose such information to your attorney(s), your tax advisor(s) and members of your immediate family, or to governmental agencies, such as taxing authorities. You agree to cause any permitted third party recipient of any such information to maintain the strict confidentiality of the terms and provisions of this Agreement. You further agree that if you breach any provision of this Section, you will not be entitled to the Special Consideration provided under this Agreement.

13. You agree to maintain the strict confidentiality of all confidential or proprietary information received by you while an employee of McGraw-Hill, including all information which you know or should know McGraw-Hill treats as confidential and all information not known to third parties engaged in the same or a similar business as McGraw-Hill or that gives McGraw-Hill a competitive advantage. All records, files, documents, software, laptop computer, equipment, plans, policies, and other like materials relating to McGraw-Hill, or received by you in the course of your employment shall remain the sole property of McGraw-Hill and shall not be copied or turned-over to any third party and shall be returned by you to McGraw-Hill at the time specified by McGraw-Hill but in no event later then the Employment Termination Date.

14. With respect to any pending or future litigation or investigations involving McGraw-Hill, to the extent you have information or background about them, at the request of McGraw-Hill, you agree to appear and give testimony at depositions and at trial or other proceedings related to such litigation. McGraw-Hill shall reimburse you for your reasonable out-of-pocket expenses, if any, actually incurred by you in connection with your attendance at any such proceedings.

15. In the event you obtain another position with McGraw-Hill or if you are offered a comparable or substitute position with McGraw-Hill before your Employment Termination Date, this Agreement shall automatically be deemed null and void and McGraw-Hill shall have no obligation to make any payments, including any payment of Special Consideration, nor to provide any other benefits under or in connection with this Agreement.

16. You agree that neither the existence of this Agreement nor the obligation to pay Special Consideration for the release of all claims, as provided in this Agreement, nor any other provision of this Agreement, shall be considered or shall be admissible in any action or proceeding, as an admission by McGraw-Hill of any liability, violation of law, error or omission.

17. This Agreement sets forth the entire understanding of the parties concerning its subject matter, superseding all prior and contemporaneous understandings, memoranda, representations and agreements. Notwithstanding the foregoing, nothing in this Agreement shall diminish any prior obligation of confidentially, non-competition or non-solicitation, if applicable, including any obligation contained in a written agreement, McGraw-Hill policy, or applicable law or otherwise. This Agreement may not be modified or amended except by a written instrument that specifically refers to this Agreement and which is signed by both you and an officer of McGraw-Hill. This Agreement shall be subject to and governed by the laws of the State of New York applicable to agreements entered into and wholly to be performed in that State.

18. Should any provision of this agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this agreement in full force and effect. You acknowledge that you have not relied on any representations, promises, or agreements of any kind made to you in connection with your decision to accept this agreement, except for those set forth in this agreement.

B. Curtis Agreement
Aug. 25, 2005
Page 5 of 7

19. This Agreement is intended to comply with Section 409A of the Internal Revenue Code of 1986, as amended (the "Code"), and shall be construed and interpreted in accordance with such intent. To the extent that any amount payable pursuant to this Agreement is subject to Code Section 409A, it shall be paid in a manner that will comply therewith, including proposed, temporary or final regulations or any other guidance issued by the Secretary of the Treasury and the Internal Revenue Service with respect to Code Section 409A (the "Guidance"). In the event that any provision of this Agreement would fail to satisfy the requirements of the Code Section 409A and the Guidance, McGraw-Hill shall be permitted to reform this Agreement to maintain to the maximum extent practicable the original intent thereof without violating the requirements of Code Section 409A or the Guidance.

Very truly yours,

*Joyce Hunsucker*
Joyce Hunsucker
Director, Human Resources


ACCEPTED AND AGREED:

Signature: *Brenda M. Curtis*   Date: 9/14/05

Print Name: Brenda M. Curtis   Social Security No.: 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

DATA ENTRY
OCT 0 7 2005

B. Curtis Agreement
Aug. 25, 2005
Page 6 of 7

D00011

Attachment 1

## YOU MUST COMPLETE THE SECTION BELOW

## TO RECEIVE THE BENEFITS DESCRIBED IN THIS LETTER

Name of Employee:     Brenda M. Curtis

I elect to receive my unpaid separation pay in a lump sum on or about my termination date. (If you do not indicate your choice by signing and returning this form by the Effective date, you will be paid under the lump sum option and your insurance coverages shall not be continued.

_____                    _____
(Signature)                                                    (Date)

### OR

I elect to receive any unpaid separation pay in the form of separation pay benefit checks in accordance with the corporation's regularly scheduled semi-monthly payroll cycle, constituting payment for the number of weeks on which my separation benefit is based (the "separation pay period"). Further, by signing below I have indicated my desires as to whether or not to continue my current participation in group medical, dental, and life insurance plans during the separation pay period at active employee rates.

Sign here to continue coverages                    Sign here to discontinue coverages

*[signature: Brenda W. Curtis]*                    _____
Signature                                                        Signature

9/14/05
Date                                                                  Date

DATA ENTRY
OCT 0 7 2005

B. Curtis Agreement
Aug. 25, 2005
Page 7 of 7

D00012