PROSKAUER ROSE LLP
Gregory I. Rasin
Elise M. Bloom
Steven D. Hurd
1585 Broadway
New York, New York  10036-8299
Telephone: 212.969.3000
Fax: 212.969.2900
E-mail: ebloom@proskauer.com
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JANNIE PILGRIM, GIOVANNA HENSON,      :
JESAN SPENCER, BRENDA CURTIS,         :    Civil Action No.: 07-6618 (CM) (AJP)
                                      :              **ECF Case**
                   Plaintiffs,        :
                                      :
           against                    :
                                      :
THE MCGRAW-HILL COMPANIES, INC.,      :
                                      :
                   Defendant.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# <u>TABLE OF CONTENTS</u>

**Page**

Table of Authorities .................................................................................................. iii

PRELIMINARY STATEMENT ................................................................................. 1

POINT I: PLAINTIFF BRENDA CURTIS ................................................................ 3

    A.    Curtis Concedes Dismissal Of The Majority Of Her Claims. ................... 3

    B.    Curtis's Claims As To "New" Positions Should Be
        Dismissed.. ................................................................................................ 3

    C.    Curtis's Claims With Respect To The Remaining Positions
        Fail. ........................................................................................................... 4

            1.    Administrative Assistant for Chief Information
                Officer of Technology, S&P. ................................................... 5

            2.    Administrative Assistant in S&P Ratings. ................................ 6

            3.    Administrative Assistant in Structured Finance
                Reporting to Paul Kelly. ......................................................... 7

            4.    Administrative Assistant to SVP of Global Services
                & Sales. ................................................................................... 8

    D.    Stadnyk's Recommendation Letter Is Not An Adverse
        Employment Action. ................................................................................ 9

POINT II: PLAINTIFF JESAN SPENCER ............................................................. 10

    A.    Spencer's Race Discrimination Claim Should Be Dismissed. ................ 10

    B.    Spencer Has Produced No Evidence Of Retaliation. ............................... 11

            1.    Spencer's Performance Evaluation for 2005. .............................. 12

            2.    The Alleged Reduction of Spencer's Duties Under
                Caruso. ................................................................................... 12

            3.    Spencer's Lateral Transfer to BIG in June of 2006 .................... 15

C.    Plaintiff's "New Evidence": Caruso's Comment and "Blistering" Letter ................................................................. 17

D.    Spencer's Constructive Discharge Claim Should Be Dismissed. ......................................................................... 19

POINT III: PLAINTIFF GIOVANNA HENSON

A.    Henson's Race Discrimination Claims Should Be Dismissed. ......................................................................... 20

    1.    Talent Acquisition Specialist at S&P. ...................... 20

    2.    Recruiting Specialist, Campus Recruiting at S&P. ............ 21

    3.    HR Representative at S&P. .............................. 22

B.    Henson's Retaliation Claims Fail As A Matter Of Law. ........................................... 23

CONCLUSION ............................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alfano v. Costello*,
    294 F.3d 365 (2d Cir. 2002) ........................................................................ 11, 18

*Almonord v. Kingsbrook Jewish Med. Ctr.*,
    No. 04 Civ. 4071 (NGG)(RML), 2007 U.S. Dist. LEXIS 58529
    (E.D.N.Y. Aug. 10, 2007)............................................................................5,7

*Ascione v. Pfizer, Inc.*,
    312 F. Supp 2d 572 (S.D.N.Y. 2004),
    *aff'd*, 138 Fed. App'x 347 (2d Cir. 2005).............................................................21

*Bryant v. Verizon Communs. Inc.*,
    550 F. Supp. 2d 513 (S.D.N.Y. 2008) ................................................................4

*Burlington N. & Santa Fe Ry. v. White.*,
    548 U.S. 53, 236 S. Ct. 2405 (2006) ..................................................................9

*Buttry v. Gen. Signal Corp.*,
    68 F.3d 1488 (2d Cir. 1995) ............................................................................2

*Campbell v. Home Depot U.S.A., Inc.*,
    No. 03. Civ. 1421, 2006 U.S. Dist. LEXIS 14958 (S.D.N.Y. Mar. 30, 2006),
    *aff'd*, 221 F. App'x 21 (2d Cir.),
    *cert. denied*, 128 S. Ct. 107 (2007) ............................................................5, 7, 9

*Celestino v. Montauk Club*,
    No. 97 CV 3943 (CLP) 2000 U.S. Dist. LEXIS 21845
    (E.D.N.Y. Mar. 12, 2000)........................................................................ 18, 22

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ......................................................................................2

*Cifra v. G.E. Co.*,
    252 F.3d 205 (2d Cir. 2001) ...........................................................................18

*Cohen v. Fed. Express Corp.*,
    544 F. Supp. 2d 334 (S.D.N.Y. 2008) ................................................................4

*Connecticut v. Teal*,
    457 U.S. 440 (1982) ......................................................................................1

*Danzer v. Norden Sys.*,
    151 F.3d 50 (2d Cir. 1998) .............................................................................22

*DeLuca v. Bank of Tokyo Mitsubishi UFJ, Ltd.*,
   06 Civ. 5474, 2008 U.S. Dist. LEXIS 25916 (S.D.N.Y. Mar. 31, 2008) ........................ 8, 11

*Fisher v. Vassar College*,
   114 F.3d 1332 (2d Cir. 1997) ........................................................................... 14

*Hayes v. Kerik*,
   414 F. Supp. 2d 193 (E.D.N.Y. 2006) ................................................................. 25

*Heno v. Sprint/United Mgmt. Co.*,
   208 F.3d 847 (10th Cir. 2000) ....................................................................... 1, 23

*Hines v. Hillside Children's Ctr.*,
   73 F. Supp. 2d 308 (W.D.N.Y. 1999) ............................................................... 6, 22

*Holt v. KMI-Continental*,
   95 F.3d 123 (2d Cir. 1996),
   *cert denied*, 520 U.S. 1228 (1997) ................................................................... 21

*Jute v. Hamilton Sundstrand Corp.*,
   420 F.3d 166 (2d Cir. 2005) ............................................................................. 16

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792, 93 S. Ct. 1817 (1973) .................................................................. 14

*McPherson v. N.Y. City Dep't of Educ.*,
   457 F.3d 211 (2d Cir. 2006) ............................................................................... 2

*O'Dell v. Trans World Entm't Corp.*,
   153 F. Supp. 2d 378 (S.D.N.Y. 2001),
   *aff'd*, 40 Fed. App'x 628 (2d Cir. 2002) ............................................................. 25

*Penney v. AIG Domestic Claims Inc.*,
   04 Civ. 9071, 2007 U.S. Dist. LEXIS 12763 (S.D.N.Y. Feb. 20, 2007) ......................... 3

*Perma Research & Dev. Co. v. Singer Co.*,
   410 F.2d 572 (2d Cir. 1969) ............................................................................... 2

*Petrosino v. Bell Atl.*,
   385 F.3d 210 (2d Cir. 2004) .......................................................................... 4, 10

*Ramos v. Marriott Int'l*,
   134 F. Supp. 2d 328 (S.D.N.Y. 2001) .................................................................. 22

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir. 1997) ........................................................................ 2, 11, 13

iv

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133, 120 S. Ct. 2097 (2000) ..................................................................6

*Richardson v. N.Y. State Dep't of Corr. Serv.*,
  180 F.3d 426 (2d Cir. 1999) ..............................................................................9

*Riddle v. Liz Claiborne*,
  No. 00 Civ. 1374, 2006 U.S. Dist. LEXIS 78496 (S.D.N.Y. Oct. 26, 2006) ..................18, 21

*Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*,
  183 F.3d 155 (2d Cir. 1999) ......................................................................2, 8, 23

*Scotto v. Almenas*,
  143 F.3d 105 (2d Cir. 1998) ..............................................................................2

*Smith-Barrett v. Potter*,
  541 F. Supp. 2d 535 (W.D.N.Y. 2008)..............................................................6, 22

*Spence v. Maryland Cas. Co.*,
  995 F.2d 1147 (2d Cir. 1993)............................................................................18

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502, 113 S. Ct. 2472 (1993) ..................................................................6

*Taylor v. City of N.Y.*,
  269 F. Supp. 2d 68 (E.D.N.Y. 2003)..........................................................9, 12, 20

*Texas Dep't of Community Affairs v. Burdine*,
  450 U.S. 248, 101 S. Ct. 1089 (1981) ..................................................................6

*Thomlison v. Sharp Elecs.*,
  99 Civ. 9539 (CM), 2000 U.S. Dist. LEXIS 18979
  (S.D.N.Y. Dec. 22, 2000) (McMahon, J.) ..........................................................25

*Wanamaker v. Columbian Rope Co.*,
  108 F.3d 462 (2d Cir. 1997) ............................................................................24

## OTHER AUTHORITIES

F. Reed Dickerson, *Clear Legal Drafting: What's Holding Us Back?*,
  5 Est. & Tr. Q. 146, 150 (1979-81) ....................................................................1

FED. R. EVID. 801................................................................................................8, 23

FED. R. EVID. 802................................................................................................8, 23

## PRELIMINARY STATEMENT

"The price of clarity, of course, is that the clearer the document, the more obvious its substantive deficiencies."[1]  Plaintiffs present confusing arguments in their opposition papers that, at many points, seem completely unrelated to the motion filed by Defendant in an apparent effort to veil the substantive deficiencies in their opposition and to obfuscate the propriety of granting Defendant's motion.  Specifically, Defendant The McGraw-Hill Companies, Inc. ("McGraw-Hill" or "Defendant") moved for summary judgment as to the claims brought against it by Plaintiffs Brenda Curtis ("Curtis"), Jesan Spencer ("Spencer") and Giovanna Henson ("Henson"), and  ("collectively Plaintiffs").  Completely disregarding the fact that Defendant did not move for summary judgment as to Plaintiff Jannie Pilgrim ("Pilgrim"), Plaintiffs' opposition papers devote significant attention to Pilgrim's inflammatory but unproven allegations in this case.  However, there is no motion pending as to her claims.  Defendant's motion deals only with Curtis, Spencer and Henson, who have filed individual claims against McGraw-Hill which, as Plaintiffs concede, must be considered independently.  ((Pls.' Opp. Br. at 13) ("the courts have consistently emphasized that the ultimate issue is the reasons [sic] for *the individual plaintiff's* treatment") (emphasis in original) (*citing Connecticut v. Teal*, 457 U.S. 440, 453-54 (1982).)  Any attempt to interject Pilgrim's allegations as a basis for defeating Defendant's motion should be disregarded because they are not tied to the employment decisions at issue.  *See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000) ("anecdotal evidence of discrimination should only be admitted if 'the prior incidences of alleged discrimination can

---

[1] F. Reed Dickerson, *Clear Legal Drafting: What's Holding Us Back?*, 5 Est. & Tr. Q. 146, 150 (1979-81).

somehow be tied to the employment actions disputed in the case at hand'") (internal citations omitted).

While Plaintiffs acknowledge that the non-moving party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial" (Pls.' Opp. Br. at 6 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), Plaintiffs' opposition falls far short of this standard.  It consists, in large part, of conclusory allegations, speculation and conjecture, all of which is insufficient to defeat Defendant's motion.  *See, e.g.*, *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).  Plaintiffs' opposition is also plagued by the following deficiencies:

- Plaintiffs' opposition  is replete with false or misleading citations to the record, and often Plaintiffs fail to cite to any support at all for their conclusory assertions.

- Plaintiffs inappropriately cite to and rely upon inadmissible hearsay.  *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155 (2d Cir. 1999).  For example, Plaintiffs cite to comments allegedly made by Terry McGraw and David Murphy during a meeting with African American employees and to notes of that meeting allegedly taken by Jordan Grant. (Pls.' Opp. Br. at 32; Pls.' Rule 56.1 Decl. § 239.)

- Plaintiffs attempt to create an issue of fact with self-serving affidavits that contradict their previous deposition testimony, but "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997); *see also Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995) *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969).

## POINT I:  PLAINTIFF BRENDA CURTIS

**A.    Curtis Concedes Dismissal Of The Majority Of Her Claims.**

Curtis concedes that her claims arising prior to October 3, 2005, are barred by the general release, which she signed after she was advised of her dismissal from McGraw-Hill and through which she waived all claims against McGraw-Hill.  (Pls.' Rule 56.1 Decl. Resp. to Def.'s ¶¶ 154, 156.)  Further, Curtis did not oppose and therefore concedes that summary judgment against her is appropriate as to her claims regarding the following positions: (1) Administrative Assistant/Office Manager to Vice President in Global Licensing and Contracts; (2) Graphic Design in Marketing; (3) Office Manager in Vista Research Inc.; (4) Assistant Compliance Officer; (5) Administrative Assistant in Corporate and Government Ratings.  (Pls.' Rule 56.1 Decl. Resp. to Def.'s ¶¶  139, 40, 151, 153 -56.)  Thus, those claims should be dismissed.

**B.    Curtis's Claims As To "New" Positions Should Be Dismissed.**

In response to McGraw-Hill's motion, and despite her self-proclaimed "photographic memory" (Solotoff Decl. Ex. W), Curtis, for the first time, claims to have applied for more positions than the seven she identified in the complaint (Rasin Decl. Ex. L), in her answers to interrogatories (Rasin Decl. Ex. NN) or at her deposition (Curtis Tr. 144-59, 161, 163) and which were addressed in Defendant's motion.  (Pls.' Rule 56.1 Decl. Resp. to Def.'s ¶ 137.)  Her failure to raise these positions until her opposition for summary judgment is inappropriate, and the Court should not consider any claims regarding these positions.  *See, e.g.*, *Penney v. AIG Domestic Claims Inc.*, 04 Civ. 9071, 2007 U.S. Dist. LEXIS 12763, *32-33 (S.D.N.Y. Feb. 20, 2007) (holding that it is inappropriate to raise claims for the first time in opposition to summary judgment and thus refusing to consider plaintiff's discriminatory discharge claim) (citing cases).

Moreover, Curtis does not identify these positions, merely stating, "she applied for more positions than are listed above."  (Pls.' Rule 56.1 Decl. Resp. to Def.'s ¶ 137.)  In support of this

claim, Curtis cites to Solotoff Decl., Ex. S, which includes the applications of *other* individuals for various positions but contains no evidence that Curtis applied for these alleged, unidentified additional positions.  *Cohen v. Fed. Express Corp.*, 544 F. Supp. 2d 334, 343 (S.D.N.Y. 2008) (granting summary judgment on plaintiff's discrimination claims because plaintiff's "unverified and speculative claims, unsupported by admissible evidence, do not create material issues of fact").  In fact, immediately after claiming she applied for "additional positions" in her Rule 56.1 Declaration, Curtis states she applied for only seven positions, all of which were addressed on McGraw-Hill's motion.  (Pls.' Rule 56.1 Decl. Resp. to Def.'s ¶ 138.)

The only "additional" position Curtis even refers to is an Administrative Assistant position in Data Operations, which she claims was set to begin on November 28, 2005.  However, she provides no support for her conclusory assertion this position existed or was open at the time of her alleged application.  (Pls.' Opp. Br. at 49.)  Curtis cannot use mere speculation to establish that a vacancy existed, and she cannot establish a *prima facie* case of discrimination and/or retaliation as to that position.  *Petrosino v. Bell Atl.*, 385 F.3d 210, 228 (2d Cir. 2004) (dismissing plaintiff's claims where there was no evidence of any vacant positions within the limitations period); *Bryant v. Verizon Communs. Inc.*, 550 F. Supp. 2d 513, 535 (S.D.N.Y. 2008) (granting summary judgment where plaintiff failed to provide more than conclusory allegations of discrimination and retaliation).  As such, Curtis's claims with respect to additional, vague, unidentified positions should be dismissed.  *See Cohen,* 544 F. Supp. 2d at 343.

**C.**    **Curtis's Claims With Respect To The Remaining Positions Fail.**

Curtis fails to address Defendant's arguments in favor of summary judgment as to the remaining positions for which she applied and presents no evidence of any discriminatory or retaliatory intent.  Curtis's sole opposition is simply asserting she was qualified for the positions,

ignoring the utter lack of any evidence that an improper motive played any role in the hiring decisions.

### 1.    Administrative Assistant for Chief Information Officer of Technology, S&P.

With respect to the Administrative Assistant position for the Chief Information Officer of Technology for S&P (Rasin Decl. Ex. LL),  Curtis makes the conclusory assertions that she was "more qualified for this position than any other candidate" and that the position was filled by an "external hire."  (Pls.' Opp. Br. at 49.)  Curtis conveniently ignores the fact that an African American woman with the requisite experience for the position, a Bachelor's Degree, and previous experience as a Research Assistant for an S&P customer, filled the position.  (Held Aff. ¶ 6.)  Thus, Curtis can show no racial bias.  *See, e.g., Almonord v. Kingsbrook Jewish Med. Ctr.*, No. 04 Civ. 4071 (NGG)(RML), 2007 U.S. Dist. LEXIS 58529, at *27-28 (E.D.N.Y. Aug. 10, 2007) (finding no inference of racial bias where plaintiff's replacement was a member of the same protected class as plaintiff).

Likewise, Curtis does not respond to the fact that the hiring manager for this position, Joseph Held, had no knowledge of her alleged complaints of discrimination, belying her retaliation claim as to that position.  (Held Aff. ¶ 7.)  Indeed Held did not learn of her complaints of discrimination until June 2008.  (*Id.*)  Thus, Curtis is unable to demonstrate a causal connection between her alleged complaints and the hiring decision, which is fatal to her retaliation claim.  *See Campbell v. Home Depot U.S.A., Inc.,* No. 03. Civ. 1421, 2006 U.S. Dist. LEXIS 14958, at *38-39 (S.D.N.Y. Mar. 30, 2006) (granting summary judgment to defendant on plaintiff's retaliation claim where supervisors allegedly responsible for plaintiff's termination lacked knowledge of her complaints), *aff'd*, 221 F. App'x 21 (2d Cir.), *cert. denied*, 128 S. Ct. 107 (2007).

2.    **Administrative Assistant in S&P Ratings.**

Curtis suggests she should have received the Administrative Assistant position in S&P Ratings over the Hispanic candidate who filled the position because she "was more qualified for this position than any other candidate." (Pls.' Opp. Br. at 50.) This conclusory assertion is insufficient to show pretext in light of the hiree's qualifications. *See generally Smith-Barrett v. Potter,* 541 F. Supp. 2d 535 (W.D.N.Y. 2008) (finding no evidence of pretext where plaintiff asserted her opinion that she was better qualified than other equally qualified candidates of different race for position); *Hines v. Hillside Children's Ctr.*, 73 F. Supp. 2d 308, 320 (W.D.N.Y. 1999) ("Whether plaintiff considered himself to have been the better candidate, then – indeed, even whether he was the better candidate – is not the issue . . . Employers should be free to choose the person that they honestly (even if erroneously) consider the better qualified candidate without being subjected to liability merely because the two candidates are of a different race.") (quotations omitted).

Here, the hiree had eight years of prior administrative experience with BusinessWeek and came highly recommended by the hiring manager's colleagues within the Ratings department. (Stein Aff. ¶ 5.) *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 259, 101 S. Ct. 1089 (1981). Curtis presents no evidence of any unlawful criteria being used in the hiring decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 140, 120 S. Ct. 2097, 2104 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524, 113 S. Ct. 2472, 2756 (1993).

Similarly, with respect to her retaliation claim, Curtis makes no attempt to refute the fact that the hiring manager for this position, Shari Stein, had no knowledge of Curtis's alleged complaints of discrimination. Instead, Curtis claims the recruiter for this position, Blessing Mariano ("Mariano"), spoke with Stadnyk, Curtis's former supervisor, regarding Curtis's prior performance on or about November 11, 2005. (Pls.' Opp. Br. at 50.) This fact, however, does

not demonstrate that Mariano had knowledge of any complaint of discrimination by Curtis or that she conveyed any such knowledge to Stein, the decisionmaker for this position. Mariano's notes contain nothing to show that Stadnyk mentioned a complaint by Curtis or that he made any discriminatory remarks. (Solotoff Decl. Ex. W.) Further, Mariano, who was responsible for screening applicants, *passed Curtis on to be considered by Stein*, negating any inference of discriminatory or retaliatory animus by Mariano. (Stein Aff. ¶¶ 4-5.) It is unrefuted that Stein, who made the decision to reject Curtis, did not hear of any alleged complaint by Curtis until June 2008. (Stein Aff. ¶ 6.) Thus, Curtis has not and cannot demonstrate a causal connection between her alleged complaints and the hiring decision. *See Campbell*, 2006 U.S. Dist. LEXIS 14958, at *38-39.

### 3. Administrative Assistant in Structured Finance Reporting to Paul Kelly.

Curtis applied for an Administrative Assistant position serving Structured Finance and reporting to Paul Kelley. (Curtis Tr. 135-36.) While two positions were available, screening and hiring for both were done through a single process, and Curtis was interviewed for both by Nancy (Tomeo) Farrelly ("Farrelly"). (Curtis Aff. ¶¶ 5-6.) Curtis concedes that Farrelly had authority to decide whether to hire Curtis for both positions. (Curtis Aff. ¶ 7.)

Curtis once again makes the conclusory assertion that she was "more qualified" for these positions than the hirees. (Pls.' Opp. Br. at 50.) She makes no argument, nor offers any evidence, that her race or any retaliatory motive played any part in the decision-making for that position. While Curtis concedes Farrelly screened the applicants for Kelly and determined who would move on for other interviews (Pls.' Opp. Br. at 50), she ignores entirely that Farrelly selected an African American woman (along with three other applicants) to move on to the next round of interviews. Curtis's conclusory assertions regarding her qualifications aside, there is no basis for an inference of race discrimination. *See Almonord*, 2007 U.S. Dist. LEXIS 58529, at *27-28.

With respect to her claim of retaliation, Curtis likewise produces no admissible evidence (nor does she even present any argument) that Farrelly had any knowledge of Curtis's alleged complaints of discrimination.  Curtis relies solely on an affidavit submitted by Pilgrim, in which Pilgrim states that Pilgrim heard Farrelly say that "she was not going to hire Brenda or grant her an interview" and that "she said it was because Brenda had made complaints about Vlad Stadnyk, and she would not be considering her for any open positions in Structured Finance." (Pilgrim Aff. ¶ 3.)  Putting aside the issues with the veracity of Pilgrim's statement, the statement is hearsay and cannot be relied upon to defeat summary judgment.  *See* FED. R. EVID. 801, 802; *Sarno*, 183 F.2d at 160) (affirming summary judgment in favor of employer where plaintiff's retaliation claim was based on inadmissible hearsay statement included in plaintiff's declaration); *DeLuca v. Bank of Tokyo Mitsubishi UFJ, Ltd.*, 06 Civ. 5474, 2008 U.S. Dist. LEXIS 25916, at *21-22 (S.D.N.Y. Mar. 31, 2008) (granting employer summary judgment where plaintiff relied upon hearsay statements unsupported by affidavits by the speakers). Moreover, even if Pilgrim's representation of Farrelly's alleged statement is considered, there is no indication Farrelly was referring to any complaints *of discrimination* made about Stadnyk. Instead, all Pilgrim can add, at best, is that Farrelly was aware of complaints by Curtis about Stadnyk, *not* that Farrelly was aware of complaints *of discrimination* by Curtis.  It remains undisputed that Farrelly had no knowledge of Curtis's alleged complaints of discrimination. (Farrelly Aff. ¶ 6.)  Curtis has provided no evidence to the contrary, and therefore her retaliation claim fails as a matter of law.

### 4.    Administrative Assistant to SVP of Global Client Services & Sales.

Curtis asserts that she was qualified for the position of Administrative Assistant to the Senior Vice President of Global Client Services & Sales.  (Pls.' Opp. Br. at 50.)  However,

Curtis concedes the position requisition was cancelled.  (Pls.' Opp. Br. at 50.)  Because there was no job to fill (George Aff. ¶ 5), Curtis cannot establish her *prima facie* case of discrimination.

Similarly, Curtis presents no opposition to dismissal of her retaliation claim concerning that position.  In addition to the position never being filled, Curtis wholly ignores that Susan George, the hiring manager, was not aware of her alleged complaints of discrimination until June 2008.  (George Aff. ¶ 7.)  As such, Curtis cannot demonstrate a causal connection between her alleged complaints and the hiring decision (or lack thereof).  *See Campbell*, 2006 U.S. Dist. LEXIS 14958, at *38-39.

**D.    Stadnyk's Recommendation Letter Is Not An Adverse Employment Action.**

Curtis fails to show that a "reasonable employee" would have found the positive letter of recommendation from Stadnyk "materially adverse" to support a claim of retaliation.  *Burlington N. & Santa Fe Ry. v. White.*, 548 U.S. 53, 60, 236 S. Ct. 2405, 2410 (2006).  Instead, she chooses to repeat her vague allegations regarding the purportedly "false and erroneous letter of reference" provided to her by Stadnyk. (Pls'. Opp. Br. at 45.)  Therefore, her claim regarding the letter must be deemed abandoned.  *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003).

Further, Curtis has not and obviously cannot produce any evidence or law supporting that a reasonable trier of fact would have found either the initial positive recommendation letter or the letter *revised at Curtis's request to reflect her suggested revisions* were disadvantageous in such a way that Curtis might not have complained if she had known her complaint would result in Stadnyk using the language he did.  *See Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 443 (2d Cir. 1999) (holding plaintiff's conclusory allegation that she deserved excellent, rather than average, performance rating was insufficient to establish an adverse or disadvantageous action constituting retaliation.)  As Curtis remains unable to establish a *prima facie* case of retaliation based on the letter of recommendation, this claim should be dismissed.

## POINT II:  PLAINTIFF JESAN SPENCER

**A.    Spencer's Race Discrimination Claim Should Be Dismissed.**

Spencer claims that Defendant discriminated against her because of her race by creating a racially hostile work environment due to the use of profanity by her direct supervisor, Ken Caruso ("Caruso"). (*See* Pls.' Opp. Br. at 36-37.) However, Spencer has provided no evidence that: (1) she was subjected to a work environment sufficiently severe or pervasive to alter the conditions of her employment; or (2) Caruso's use of profanity was racial in nature or due to her race. Caruso admits that he used profanities such as "shit" and "fuck" in Spencer's and other employees' presence and that he used the term "bitch" as an expletive in phrases like "son of a bitch" but not in reference to any woman. (Caruso Tr. 102-08.) Defendant is not excusing Caruso's use of profanity, but as demonstrated below, there is no evidence that his language was racial in nature or sufficiently severe or pervasive to create a hostile work environment.

Contrary to her statement in the opposition papers, Spencer testified at her deposition that Caruso never said "fuck you" to her or called *her* a "bitch." (Spencer Tr. 102, 158.) Even assuming that Caruso called Spencer a "bitch," neither Title VII, § 1981, the NYSHRL nor the NYCHRL protects employees against mere offhand comments, rude behavior or the "ordinary tribulations in the workplace." *Petrosino*, 385 F.3d at 223. Courts in this circuit dismiss hostile work environment claims based on far more offensive and pervasive conduct than that alleged here. (*See* Def.'s Br. at 25.) Spencer has offered no authority to the contrary (*see* Pls.' Opp. Br. at 34-39), or any authority to suggest that use of generic profanities in the workplace suffices to establish a hostile work environment. (*C.f.* Def.'s Br. at 24.) Further, Spencer admits that at all times under Caruso's supervision, she maintained the same grade level, title and benefits and that she received annual salary increases. (Spencer Tr. 78-79.) Therefore, she has not demonstrated that Caruso's conduct altered the conditions of her employment.

10

Spencer attempts to salvage her claim by contradicting her previous testimony, contending now that Caruso only stopped cursing for a short period of time following the complaint. (Pls.' Opp. Br. at 36; Pls.' Rule 56.1 Decl. Resp. to Def.'s ¶¶ 100-101; Spencer Aff. ¶¶ 9, 13.) Spencer's deposition testimony, however, is that Caruso stopped cursing after her complaint to Brett Marschke ("Marschke") and Sheila O'Neill ("O'Neill") about his language (Spencer Tr. 98-101; *see also* Caruso Tr. 113-14; O'Neill Tr. 75.) Her current contradictory assertions are legally insufficient to defeat Defendant's motion. *Raskin*, 125 F.3d at 63.

Spencer's hostile work environment claim also fails because there is no evidence that Caruso's conduct was due to her race, which Plaintiff must demonstrate in order for her claim to survive summary judgment. While conduct other than "racial epithets" (Pls.' Opp. Br. at 38) can create a hostile work environment, *Plaintiff* has the burden to prove by a preponderance of the evidence that the challenged conduct occurred "because of" her race. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

Caruso's profanity was not racial in nature or directed at Plaintiff because she is African American. (*See* Def.'s Br. at 24.) The sole basis for Spencer's allegation that his cursing was "because of race" is that Caruso cursed in front of her and Sheila Mitchell, his assistant, who also is African American. (*See* Pls.' Opp. Br. at 36-38; Pls.' Rule 56.1 Decl. ¶ 263.) However, Spencer testified at her deposition that Caruso cursed in front of other employees who were not African American. (Spencer Tr. 225-26.) The statements in her opposition that "[h]e did not use the same offensive language with white male or white females" (Pls.' Opp. Br. at 36), as with her other contradictory statements, are insufficient to defeat summary judgment as a matter of law. *See DeLuca*, 2008 U.S. Dist. LEXIS 25916, at *21-22.

**B.    Spencer Has Produced No Evidence Of Retaliation.**

As originally pled and then reiterated at her deposition, Spencer contends that after she

complained to Marschke and O'Neill about Caruso's cursing, she was retaliated against because: (i) Caruso gave her a negative performance evaluation for 2005; (ii) Caruso reduced her job responsibilities; and (iii) Caruso, along with Marschke and O'Neill, transferred her to another division at McGraw-Hill, the Business Information Group ("BIG"), which in her eyes was a demotion.  (Rasin Decl. Ex. L ¶¶ 50-51; Spencer Tr. 72-76, 80-82.)  Spencer's contentions are insufficient to defeat Defendant's motion.

### 1.    Spencer's Performance Evaluation for 2005.

Spencer does not dispute *any* of the arguments submitted by Defendant regarding her 2005 Performance Evaluation, and thus Defendant is entitled to summary judgment on any claims related to this evaluation.  *See Taylor* 269 F. Supp. 2d at 75 ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.")  Further, the evaluation cannot support a claim of retaliation because:  (1) it had no negative impact on her compensation, benefits, title, or grade level (Spencer Tr. 78-79), and thus is not a materially adverse employment action (*see* Def.'s Br. at 30 & supporting authority); and (2) there is no temporal or causal link between any of her alleged complaints about Caruso or her EEOC Charge and the evaluation (*see id.* at 31; *see also* Spencer Tr. 62-63; Harper Tr. 47-48; Rasin Decl. Exs. W, X, Z).

### 2.    The Alleged Reduction of Spencer's Duties Under Caruso.

In her opposition, it appears that Spencer is claiming that any reduction in her duties by Caruso was in retaliation for her complaint about him.[2]  Caruso became Spencer's supervisor in

---

[2] As originally pled, it was unclear whether Spencer was claiming that Caruso reduced her duties as an element of her race discrimination or that he reduced her duties in retaliation for her complaint about his use of inappropriate language.  It now appears that the claim is solely one of

February of 2005. (Spencer Tr. 63-64.) Assuming that her duties changed after Caruso became her supervisor, the undisputed evidence in the record does not support any finding that her job was materially altered or that any change was retaliatory.

Spencer's only support for her argument that Caruso reduced her job duties in retaliation for her alleged complaint about his cursing is a self-serving affidavit listing almost every possible duty she could have as a duty that Caruso took away from her. (*See* Pls.' Opp. Br. at 42; Spencer Aff. ¶ 14.) This laundry list of her duties should be disregarded because it is inconsistent with her deposition testimony. At her deposition, Spencer was specifically questioned about which duties she felt were reduced, and her response did not include many of the duties listed in her affidavit. (*Compare id. with* Spencer Tr. 74-75, 129-33.) She now claims, for example, that her involvement in employee resolution issues was prevented, that she was not involved in "leadership development programs or needs analysis," and that her involvement in employee relations was "reduced by over 80%." (*Compare* Spencer Aff. ¶ 14 *with* Spencer Tr. 75-76, 129-33.) Spencer may not create an issue of fact by submitting a self-serving affidavit that, "by omission or addition," contradicts her previous testimony. *Raskin*, 125 F.3d at 63.

Moreover, even if her job duties were changed as she claims, Spencer has failed to establish that any alleged reduction in her duties caused a material adverse change in the terms or conditions of her employment. Spencer has admitted that, at all times under Caruso's supervision, she maintained the same grade level, title and benefits and that she received annual pay increases for 2005 and 2006. (Spencer Tr. 78-79, 109.) A change in responsibilities,

---

retaliation. Even if considered as an element of her race claim, it fails for the same reasons as addressed in connection with her retaliation claim.

whether allegedly discriminatory or retaliatory, does not qualify as an adverse employment action unless it has a materially adverse affect on the terms or conditions of employment, such as a change in pay or benefits. (*See* Def.'s Br. at 27 (discriminatory), 32-33 (retaliatory).)

Even assuming the alleged reduction in Spencer's duties materially affected the terms of Spencer's employment, her claim still fails because Defendant had legitimate reasons for any alteration of her duties (*i.e.*, her performance) which she cannot show to be pretextual. Once Defendant has proffered a legitimate, non-retaliatory reason for any change in Spencer's duties, to defeat Defendant's motion, Spencer must provide competent evidence showing that the real reason for the alleged reduction was retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973); *Fisher v. Vassar College*, 114 F.3d 1332, 1339 (2d Cir. 1997). Spencer suggests that Defendant's legitimate reasons for changing her duties was a pretext for retaliation because she had a record of stellar job performance from 2001 to 2004. In support of this suggestion, she lists every area in which her performance was recognized as satisfactory on her performance reviews for those years. (*See* Pls.' Opp. Br. at 35, 39; Pls.' Rule 56.1 Decl. ¶¶ 259-62.) This picture is skewed and misses the point.

First, Spencer does not cite to any evidence at all regarding her performance in 2005 (Pls.' Opp. Br. at 35; Pls.' Rule 56.1 Decl. ¶¶ 259-62), the year in which the alleged reduction in her duties began. Second, McGraw-Hill has never claimed that Spencer's *overall* performance was not satisfactory prior to 2005 or even during 2005 under Caruso's supervision. To the contrary, Defendant maintains that, for the most part, her duties remained unchanged other than in some specific areas where she was struggling (*i.e.*, verbal communication skills, training, diversity recruitment and interaction with clients). (*See* Def.'s Br. at 28-29; Caruso Aff. ¶¶ 4-5.) Not coincidentally, these are the same areas in which Spencer claims her duties were

significantly reduced.  Contemporaneous documentation, such as Spencer's performance

reviews, demonstrates that Spencer exhibited deficiencies *in these areas* from 2003 through

2005, while under both William Harper's (African American) and Caruso's supervision. (*See*

Rasin Decl. Exs. W, X, Y, Z, AA.)  In addition to Caruso, Spencer's clients and Harper also

observed that she exhibited performance deficiencies in these areas specifically. (*See id.*; Harper

Tr. 47-49.)

For example, with respect to Spencer's diversity recruitment efforts, Spencer disowns

any responsibility for her poor performance (Pls.' Opp Br. at 39); however, she cites no evidence

from 2005 to support her allegedly stellar diversity or recruitment skills and instead blames

Caruso for any reduction in these duties (Spencer 72-75, 129-32).  The undisputed evidence

remains that she did not identify a single diverse candidate suitable for hire in 2005 (*see* Rasin

Decl. Exs. X, Z), a responsibility which admittedly was hers (*see* Spencer Tr. 47-49; Pls.' Rule

56.1 Decl. Resp. to Def.'s ¶ 65).  For all of these reasons, Spencer's claims regarding the

reduction of her duties fails.

### 3.    Spencer's Lateral Transfer to BIG in June of 2006.

As an initial matter, Spencer fails to make *any* argument that her transfer constituted a

materially adverse employment action – a requisite for her *prima facie* case of retaliation.  It is

undisputed that Spencer's transfer did not negatively impact her compensation, grade level, title

or benefits (Spencer Tr. 109); Spencer transferred from a Senior Human Resources Manager

position for BusinessWeek to the exact same position at BIG (*id.*; O'Neill Tr. 206-07; Marschke

Tr. 108-10; Harper Tr. 53-56).  A lateral transfer which does not affect a plaintiff's

compensation, benefits or job opportunities does not suffice to establish a *prima facie* case of

retaliation.  (*See* Def.'s Br. at 34 & supporting authority.)  Spencer, therefore, has failed her

initial burden of proving a *prima facie* case of retaliation regarding the transfer.  *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

Spencer has also failed to prove pretext.  Spencer conveniently neglects to mention that she was the one who requested the transfer.  (Spencer Tr. 91-92, 114; O'Neill Tr. 206-07.)  She was pleased with the suggestion of the position at BIG initially, and there was no reason to believe that she would not be, given that it was a lateral transfer. (Spencer Tr. 109; O'Neill Tr. 206-07; 212-13.)  Following her request, O'Neill, Marschke and Harper suggested this position based on the business needs of the Company.  (O'Neill Tr. 206-08; Harper Tr. 51-54; Marschke Tr. 36-42.)  Spencer has not, and cannot, offer any evidence to rebut these needs.  Finally, by the time Spencer expressed reluctance about leaving BusinessWeek, she had made it abundantly clear that she would no longer work for Caruso.  (O'Neill Tr. 206-07.)  While Caruso did later transfer, Spencer requested the transfer in April 2006 and Caruso did not decide that he would transfer until June 2006.  (O'Neill Tr. 205-06, 211; Caruso Tr. 8-12.)

Spencer inexplicably suggests that a statement in Caruso's 2005 performance evaluation ("PMP") is the "smoking gun" evidence to demonstrate that Defendant's legitimate, non-retaliatory reasons for Spencer's transfer are pretextual.  (Pls.' Opp. Br. at 40.)  However, Caruso's 2005 PMP does not indicate that retaliatory animus was a motivating factor for Spencer's transfer for several reasons.

First, Spencer cites an incomplete portion of the statement in the PMP to provide a purported connection between it and Spencer's transfer.  (*Compare* Solotoff Decl. Ex. DD, at D07591 *with* Pls.' Opp. Br. at 40.)  A reading of the complete paragraph shows that the purpose of the statement was to *counsel Caruso* on improving his relationships with his staff, which is exactly why Brett Marschke, Caruso's supervisor, wrote it and how Caruso interpreted it.  (*See*

*id.*; Caruso Tr. 91-97; Marschke Tr. 22-25, 27-41.)  Spencer has not shown that either Marschke

or Caruso harbored retaliatory animus through these comments.

Second, Spencer cannot demonstrate that the statement in the review is in any way

connected to Spencer's transfer because it is undisputed that Caruso had no involvement in the

decision to transfer Spencer.  (Caruso Tr. 78-79; O'Neill Tr. 206-08; Harper Tr. 51-54; Marschke

Tr. 40-42.)  There is no evidence (and Spencer cites to no evidence) that Caruso initiated the

papers for Spencer's transfer or that Caruso knew in advance that Spencer would be transferred.

(*See* Pls. Opp. Br. at 41.)

As to Marschke, the evidence is that he had input in the transfer decision to the extent

that, once he was aware of *Spencer's request* to be transferred, he sought an available,

comparable position for her.  (Marschke Tr. 36-42; O'Neill Tr. 206-10.)  Given that Spencer

initially requested the transfer (which she admits (Spencer Tr. 114)), Marschke correctly

recognized it as being voluntary (Marschke Tr. 36, 41).

Finally, Spencer's reference to Harper's involvement in her transfer is equally unavailing.

Spencer suggests, without support, that Harper knew of her EEOC Charge at the time of her

transfer and thus sought to transfer her in retaliation for the charge.  In addition to lacking

support, this suggestion is nonsensical.  As the Vice President of Human Resources for BIG,

Harper was pleased to accept the transfer because she would be transferring to his division,

which needed additional assistance. (Harper Tr. 54-57; Marschke Tr. 41-42.)  Notably, Spencer

does not claim that either Harper or Toi Eaton, her direct supervisor at BIG, retaliated (or

discriminated) against her.  (Spencer Tr. 62-63.)

**C.**    **Plaintiff's "New Evidence": Caruso's Comment and "Blistering" Letter.**

In the opposition papers, Spencer proffers two additional "facts" without directly relating

them to either her discrimination or retaliation claims as a basis for denying summary judgment:

(1) Caruso, in response to her telling him certain African American employees at the Company were upset, told her "they should just leave"; and (2) on June 13, 2006, Caruso wrote a "blistering" letter in complaint of Spencer. (Pls.' Opp. Br. at 36, 42.) Neither Caruso's alleged comment nor the letter provide any basis for salvaging her claims.

Spencer provides no evidence to substantiate her claim that she ever expressed concern about other African American employees to Caruso or that he responded, "they should just leave." (*See* Pls.' Opp. Br. at 36.) Assuming her allegations to be true, however, the comment allegedly made by Caruso is not probative of her discrimination claim. *See Riddle v. Liz Claiborne*, No. 00 Civ. 1374, 2006 U.S. Dist. LEXIS 78496, *34-36 (S.D.N.Y. Oct. 26, 2006) (granting summary judgment on plaintiff's discrimination claim because allegedly racial comments were susceptible to racially neutral interpretation); *see also Alfano*, 294 F.3d at 374 (plaintiff must demonstrate alleged discriminatory conduct was because of protected characteristic). At best, the comment is a stray remark with no nexus to any adverse employment action purportedly taken against her. *See Celestino v. Montauk Club*, No. 97 CV 3943 (CLP) 2000 U.S. Dist. LEXIS 21845, at *69 n.23 (E.D.N.Y. Mar. 12, 2000) ("stray *remarks* alone are, as a matter of law, insufficient to create a material issue of fact sufficient to defeat a summary judgment motion concerning discrimination claims") (emphasis in original) (*citing Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1155 (2d Cir. 1993)). The alleged comment does not even refer to the treatment of Spencer, but instead of some other unidentified employees.

The alleged comment similarly does not revive her retaliation claim. Spencer has not shown the context or timeframe as to when this alleged comment was made, and has not proven that any adverse employment action was taken as a result. *See Cifra v. G.E. Co.*, 252 F.3d 205,

216 (2d Cir. 2001) (plaintiff has burden to initially establish *prima facie* case of retaliation by

showing she suffered adverse employment action); *see also* Spencer Tr. 78-79, 109.

Spencer's argument regarding Caruso's June 13, 2006 letter is equally unavailing. The

letter has nothing to do with Spencer's race and does not indicate any discriminatory animus on

Caruso's part. (*See* Solotoff Decl. Ex. Q.) Caruso understandably wrote the letter as a defensive

response to Spencer's inflammatory accusations of sexual harassment (the accusations were

notably not at that time related to race discrimination) against him so that his viewpoint would be

documented. (Caruso Tr. 156-57.) More importantly, the letter had absolutely no adverse

consequences on the terms and conditions of Spencer's employment. It was written weeks *after*

Spencer transferred to BIG (Spencer Tr. 174-75), and Spencer had no interaction or involvement

with Caruso following the transfer (Pls.' Rule 56.1 Decl. Resp. to Def.'s ¶ 114). Further,

Spencer admits that her compensation, grade level, title and benefits were not negatively affected

by her transfer. (Spencer Tr. 109.) Spencer has failed to show that this letter played any role in

any actions taken with regard to her employment.

**D.      Spencer's Constructive Discharge Claim Should Be Dismissed.**

Spencer argues that, after her transfer, from June 2006 through the date of her

resignation, her duties were reduced significantly so that she was forced to resign. (Spencer Tr.

234-35; Spencer Aff. ¶ 16.) A constructive discharge claim cannot be established simply

through evidence that an employee is dissatisfied with alterations in her job duties. (*See* Def.'s

Br. at 36-37.)

Moreover, the undisputed facts conveniently omitted from Plaintiff's brief are that

Spencer left McGraw-Hill to fulfill her lifelong dream of owning her own business, Spencer

Healthy Life. (Spencer Tr. 243-44.) Spencer suggests that she "did not own a business in 2006,"

"she was unincorporated," and she did not have "a tax identification number." (Pls. Rule 56.1

19

Decl. Resp. to Def.'s ¶ 124.)  However, the business certificate for Spencer Healthy Life reflects that her business was registered on May 5, 2006, which was before her transfer to the position at BIG and approximately nine months before her resignation.  (*See* Rasin Decl. Ex. CC.) Regardless, Spencer has admitted that she has entertained the dream of starting her own business her entire life and began pursuing it, notably, almost a year before she resigned and before she claims her duties were significantly reduced.  (*See* Spencer Tr. 243-44; Rasin Decl. Ex. CC.)

## POINT III:  PLAINTIFF GIOVANNA HENSON

**A.**     **Henson's Race Discrimination Claims Should Be Dismissed.**

Henson originally claimed she was denied five promotions due to her race.  (Def.'s Br. at 9.)  Henson does not oppose or even address Defendant's legitimate non-discriminatory reasons for not selecting Henson for the positions of Human Resources ("HR") Representative at IMS and HR Representative at MHE.  Therefore, McGraw-Hill is entitled to summary judgment on these claims.  *See Taylor*, 269 F. Supp. 2d at 75.  Henson only opposes Defendant's motion as to three positions:  (1) Talent Acquisition Specialist in the Corporate Segment; (2) Recruiting Specialist at S&P; and (3) HR Representative at S&P.  (Pls.' Opp. Br. at 3.)  Henson has not provided a basis for denial of summary judgment as to any of these three jobs.

### 1.     **Talent Acquisition Specialist in The Corporate Segment.**

Henson concedes that she is not challenging any promotional decisions that are time-barred.  (Pls.' Opp. Br. at 3.)  The Talent Acquisition Specialist position is completely time-barred since Henson applied in 2003 and it was filled in June 2003.  Henson attempts to salvage her untimely claim by stating – for the first time in her opposition brief – that she applied for the position in 2004.  (*See* Pls.' Opp. Br. at 3, 31.)  The undisputed evidence, *including Henson's own testimony*, is that Henson applied and was interviewed for this job in 2003, not 2004. (Henson Tr. 105.)  The hiree for the position, Judy Kilduff, applied on May 2, 2003.  (Bloom

Decl. Ex. A.)  Because Henson applied for and was rejected from the Talent Acquisition

Specialist position prior to July 23, 2003, Henson's Title VII, § 1981, and state and city law

claims relating to that position are time-barred by the applicable statutes of limitations.  (*See*

Def's Br. at 9-11 & supporting authority.)

### 2.    Recruiting Specialist, Campus Recruiting at S&P.

Henson applied for the position of Recruiting Specialist, Campus Recruiting at S&P in

November 2004.  (Solotoff Decl. Ex. G, at D07305.)  Deborah O'Connor was the hiring

manager.  (O'Connor Aff. ¶ 3; Solotoff Decl. Exs. F & G.)  After interviewing, among others,

both Henson and Mariano, an Asian female, O'Connor selected Mariano because she had

extensive experience in campus recruiting and had been doing the exact same job at S&P's

competitor Morgan Stanley.  (O'Connor Aff. ¶¶ 5-6.)

Henson does not challenge Defendant's business judgment that Mariano was the superior

candidate because of her experience.  Instead, Henson offers her subjective belief that she was

more qualified.  Henson's subjective beliefs as to her qualifications are insufficient to defeat

Defendant's motion.  *See Holt v. KMI-Continental*, 95 F.3d 123, 129-30 (2d Cir. 1996); *cert*

*denied*, 520 U.S. 1228 (1997); *Ascione v. Pfizer, Inc.*, 312 F. Supp. 2d 572, 578 (S.D.N.Y. 2004),

*aff'd*, 138 Fed. App'x 347 (2d Cir. 2005).

Plaintiff then tries to impart a discriminatory motive to O'Connor by alleging that

O'Connor told Pilgrim that "Black children do not get kidnapped; no one kidnaps Black

children" and that "Diana Ross has never done anything for her people."  (Pls.' Opp. Br. at 28.)

Regardless of whether O'Connor made these statements to Pilgrim, which O'Connor denies, the

comments are not discriminatory in nature.  The mere mention of race does not render them

discriminatory.  *See Riddle*, 2006 U.S. Dist. LEXIS 78496, *34-36 (granting summary judgment

to employer where plaintiff allegedly heard a comment the "Blacks, Jews and Gays, they have it

all bad," and other employees mocked and criticized Black celebrities, including Whoopi Goldberg and Stevie Wonder). Because the comments allegedly made by O'Connor are susceptible to a racially-neutral interpretation, they do not create an inference of discrimination.

Further, even if the comments are considered discriminatory, they are, at best, stray remarks unconnected to the selection of Mariano or the employment context. "[S]tray remarks, with no nexus to the alleged adverse employment action, do not, without more, establish . . . discrimination." *Ramos v. Marriott Int'l*, 134 F. Supp. 2d 328, 338 (S.D.N.Y. 2001) (*citing Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998)); *see also Celestino*, 2000 U.S. Dist. LEXIS 21845, at * 69 n.23. The comments were not directed at or overheard by Henson; rather, Pilgrim testified that she heard them. Pilgrim did not testify as to when the comments were allegedly made (Pilgrim Tr. 52-53), and Henson has offered no evidence as to their timing.

### 3.    HR Representative at S&P.

The position of HR Representative at S&P, grade level 16, was given to an Hispanic female, Jessica Brookins ("Brookins"). Richard Fisher ("Fisher"), the hiring manager, selected Brookins because she was the same grade level (16) as the position, was three grade levels higher than Plaintiff, and had received better performance appraisals than Henson. (Fisher Tr. 169-70, 172.) Henson still has failed to demonstrate a *prima facie* case because, as a grade level 13, Henson has provided no evidence for her conclusory statement that she was qualified for the position. (Pls.' Rule 56.1 Decl. Resp. to Def.'s ¶ 49). And she has not rebutted Defendant's evidence that Brookins was not only qualified for the position but more qualified than Henson. *C.f. Smith-Barrett*, 541 F. Supp. 2d. at 541-42; *Hines*, 73 F. Supp. 2d at 320.

Further, Henson attempts to demonstrate pretext by relying exclusively on allegations by Pilgrim that Fisher made a series of racist remarks in Pilgrim's presence (not Henson's) and that Fisher discriminated against Pilgrim in her employment. (*See* Pls.' Opp. Br. at 26-28.) Pilgrim's

22

allegations of discrimination are irrelevant and should be disregarded because they are not tied to

Fisher's decision to hire Brookins rather than Henson.  *See Heno*, 208 F.3d at 856.

Moreover, any such statements made to Pilgrim are hearsay and therefore cannot

establish pretext to defeat summary judgment.  FED. R. EVID. 801, 802;  *Sarno*, 183 F.2d at 160.

Therefore, Henson has cited no admissible evidence of pretext.

**B.      Henson's Retaliation Claims Fail As A Matter Of Law.**

Henson's retaliation claim is premised on her failure to receive promotions to the

Recruiting Specialist and HR Representative positions, as well as McGraw-Hill's alleged failure

to investigate her complaint in her exit interview.  Henson's retaliation claims fail because she

cannot demonstrate protected activity and has not suffered an adverse employment action.

Henson suggests in her opposition that she engaged in some form of protected activity

when she allegedly told O'Neill that:  "You do not know what it is like being African American

at McGraw-Hill"; "complained about unfair treatment to O'Neill 'all the time'"; provided

various HR reports to O'Neill, raising issues of disparity between African American employees

and Caucasian employees; and complained in her exit interview.  (Pls.' Opp. Br. at 29-33.)

These statements, even if made, are not protected activity.  (Def.'s Br. at 18-21.)

That Henson *may have* "pointed out to Ivy Latimer about how African Americans

weren't in high level positions . . . were leaving at a quicker rate . . . and that there were a lot of

African Americans who were in lower level positions" (Henson Tr. 54), could not reasonably be

said to have put O'Neill on notice that she was complaining of discrimination.  (*See* Def.'s Br. at

19 & supporting authority.)

Even Henson's one specific alleged comment to O'Neill that "You do not know what it is

like being African American at McGraw-Hill" failed to put McGraw-Hill on notice that she was

complaining about discrimination.  (*See* Def.'s Br. at 19-21 & supporting authority.)  In her

23

affidavit, Henson states that the comment was made specifically in response to her failure to receive a promotion. (Henson Aff. ¶ 5.) Henson's affidavit contradicts her deposition testimony – wherein she testified that she never told O'Neill, during that meeting or otherwise, that she had not been selected for any jobs because of her race (Henson Tr. 152). The Court, therefore, should disregard Henson's affidavit.

Even assuming Henson engaged in protected activity, Henson also has not established a causal connection between the purported activity and any adverse employment action. There is no evidence that her failure to receive either the Recruiting Specialist or the HR Representative positions was causally connected to her alleged complaints to O'Neill. O'Neill was not the hiring manager for either position. (*See* Solotoff Decl. Exs. G, J.) Plaintiffs do not present any evidence or even allege that the hiring managers knew of Henson's alleged protected activity.

In addition, Henson testified at her deposition that, as a result of her complaints to O'Neill, O'Neill retaliated by failing to act as her advocate. (Henson Tr. 139-40.) That O'Neill may not have acted as Henson's advocate, however, is not, an adverse employment action as a matter of law. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) ("'not every unpleasant matter short of [discharge or demotion] creates a cause of action' for retaliatory discharge").

Finally, Henson cannot demonstrate that the alleged failure to investigate her comments in her exit interview constitute an adverse employment action. Setting aside the fact that Henson resigned voluntarily for a higher paying position with the New York City Department of Education, McGraw-Hill did investigate the comments in her exit interview, as evidenced by O'Neill's handwritten notes on the exit interview. (O'Neill Tr. 147-48; Bloom Decl. Ex. B, at D00219.) That Henson may believe the investigation was inadequate is irrelevant, as an

24

inadequate internal investigation does not constitute an adverse employment action. *Hayes v. Kerik*, 414 F. Supp. 2d 193, 203 (E.D.N.Y. 2006) (holding that failing to properly investigate a claim of discrimination is not an adverse employment action); *O'Dell v. Trans World Entm't Corp.*, 153 F. Supp. 2d 378, 396 (S.D.N.Y. 2001) (holding that deficiency in internal investigation – "even if the deficiency is little more than an attempt to strengthen an employer's defense" – cannot be considered a retaliatory adverse employment action), *aff'd*, 40 Fed. App'x 628 (2d Cir. 2002); *see also Thomlison v. Sharp Elecs.*, 99 Civ. 9539 (CM), 2000 U.S. Dist. LEXIS 18979, at *12 (S.D.N.Y. Dec. 22, 2000) (McMahon, J.) (granting summary judgment on retaliation claim because "there is no authority for plaintiff's contention that [the employer's] failure to act should be construed as retaliatory").

## CONCLUSION

For the reasons set forth herein and in Defendant's initial moving papers, summary judgment should be granted in favor of Defendant.

PROSKAUER ROSE LLP

Dated: New York, New York        By:        /s/ Elise M. Bloom
      July 24, 2008            Gregory I. Rasin
                                              Elise M. Bloom
                                              Steven D. Hurd
                                              1585 Broadway
                                              New York, New York 10036-8299
                                              Telephone: 212.969.3000
                                              Fax: 212.969.2900
                                              Email: ebloom@proskauer.com
                                              Attorneys for Defendant